CONNECTICUT RESOURCES RECOVERY AUTHORITY
ET AL. *v.* PLANNING AND ZONING COMMISSION
OF THE TOWN OF WALLINGFORD
(14584)

CONNECTICUT RESOURCES RECOVERY AUTHORITY
ET AL. *v.* ZONING BOARD OF APPEALS OF
THE TOWN OF WALLINGFORD ET AL.
(14585)

BORDEN, BERDON, NORCOTT, KATZ and PALMER, Js.

Argued March 23—decision released June 8, 1993

Barbara L. Cox, with whom, on the brief, was *Dennis N. Garvey*, for the appellants (defendants).

*Hugh I. Manke*, for the appellees (plaintiffs).

KATZ, J. The principal issues in these appeals are whether (1) the trial court improperly substituted its judgment for that of the defendant Wallingford zoning board of appeals (board) in determining that solid waste disposal is a valid nonconforming use of certain property that is located in the town of Wallingford, owned by the plaintiff city of Meriden and leased, in part, to the plaintiff Connecticut Resources Recovery Authority (CRRA); (2) a Wallingford zoning regulation prohibiting solid waste disposal over an aquifer is a valid exercise of the town's police power; (3) this regulation is preempted by state solid waste and water quality statutes; and (4) the trial court improperly determined that the decision of the defendant Wallingford planning and zoning commission (commission) to retain the regulation was not supported by the record. We reverse the judgment of the trial court in each case and remand with direction to dismiss the plaintiffs' appeals.

These appeals arise from two separate actions: *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission* (Docket No. 14584); and *Connecticut Resources Recovery Authority* v. *Zoning Board of Appeals* (Docket No. 14585). In the first case, the commission appeals from a judgment of the trial court sustaining the plaintiffs' appeal and reversing the

commission's denial of the plaintiffs' application to delete a local zoning regulation prohibiting solid waste disposal over an aquifer.[1] In the second case, the board appeals from the judgment of the trial court sustaining the plaintiffs' appeal and reversing the board's affirmance of a refusal by the defendant Linda Bush, the zoning enforcement officer of Wallingford, to issue a certificate of zoning compliance to the plaintiffs.[2] Because the cases were consolidated by the trial court and involve the same plaintiffs and the same parcel of land, we resolve them in one opinion.

The following relevant facts are undisputed. Since 1945, Meriden has owned a 138 acre tract of land in Wallingford. In 1958, Wallingford adopted zoning regulations that placed the tract in a rural district. At that time, a relatively small portion of the tract was being used for solid waste disposal. The largest use of the tract was for sewage lagoons to accommodate overflow from a sewage treatment plant located in Meriden. Other portions of the tract were being used for sand excavation, industrial waste disposal and sludge disposal. Much of the tract was vacant. The parties presented conflicting evidence as to whether one portion of the tract was used for stump and brush disposal or for a sawmill and lumber storage area. The parties[3] agree that sewage treatment facilities and garbage dumps were not permitted uses under the 1958 Wallingford zoning regulations.[4] These regulations pro-

---

[1] The plaintiffs in the first case are the city of Meriden and the Connecticut Resources Recovery Authority. The defendant is the Wallingford planning and zoning commission.

[2] The plaintiffs in the second case are the city of Meriden and the Connecticut Resources Recovery Authority. The defendants are the Wallingford zoning board of appeals and Linda Bush, the Wallingford zoning enforcement officer.

[3] We refer here to the parties in the second case.

[4] The 1958 Wallingford zoning regulations specified the uses that were permitted in each district. Only residential, agricultural, forestry and health

vided that while nonconforming uses[5] could be continued, they could not be changed or extended except in very limited circumstances. Wallingford Planning and Zoning Regs. § 11 (1958), "Non-Conforming Buildings and Uses."

By 1982, approximately sixty and one-half acres of the tract were being used for disposal of solid and bulky waste. In 1983, Wallingford adopted zoning regulations that established an aquifer protection district and specifically prohibited solid waste disposal in this district.[6] The district consists of the primary and secondary recharge areas of the Quinnipiac River Aquifer and the Muddy River Aquifer. Wallingford Zoning Regs. § 4.12.B (1985), "Aquifer Protection (APD) District." It includes the tract owned by Meriden. The aquifer protection regulations were codified in September, 1985, at which time they took effect.

In December, 1985, Meriden agreed to lease part of its tract to CRRA[7] for use as a disposal site for ash res-

---

care uses, and kennels, stables, riding schools and veterinary hospitals, were permitted in rural districts. Wallingford Planning and Zoning Regs. § 5 (1958), "Rural Districts." Even in industrial districts, dumping was prohibited unless done by the town of Wallingford. Id., § 8.1.13.1, "Industrial Districts."

[5] A nonconforming use of property is a use that exists and is legally permissible on the date zoning regulations are adopted, though the regulations would make such a use illegal if it were begun thereafter. T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) pp. 149–50.

[6] Section 4.12.A of the Wallingford zoning regulations provides: "A major source of Wallingford's drinking water is the Quinnipiac River Aquifer. Protection of this resource is vital to ensure an adequate supply of safe drinking water. This protection can best be achieved by regulations that control pollution within the aquifer recharge area." Section 4.12.F lists nonpermitted uses, including solid waste disposal. Wallingford Zoning Regs. § 4.12.B (1985), "Aquifer Protection (APD) District."

[7] General Statutes § 22a-261 provides in relevant part: "There is hereby established and created a body politic and corporate, constituting a public instrumentality and political subdivision of the state of Connecticut established and created for the performance of an essential public and govern-

idue, sludge, bulky waste and solid waste. On November 10, 1988, CRRA and Meriden applied to the commission to delete the regulation prohibiting solid waste disposal in an aquifer protection district. Following a public hearing on January 5, 1989, regarding the application, the commission voted to retain the regulation.

mental function, to be known as the Connecticut Resources Recovery Authority. The authority shall not be construed to be a department, institution or agency of the state."

General Statutes § 22a-262 provides: "The purposes of the authority shall be:

"(1) The planning, design, construction, financing, management, ownership, operation and maintenance of solid waste disposal, volume reduction, recycling, intermediate processing and resources recovery facilities and all related solid waste reception, storage, transportation and waste-handling and general support facilities considered by the authority to be necessary, desirable, convenient or appropriate in carrying out the provisions of the state solid waste management plan and in establishing, managing and operating solid waste disposal and resources recovery systems and their component waste-processing facilities and equipment;

"(2) The provision of solid waste management services to municipalities, regions and persons within the state by receiving solid wastes at authority facilities, pursuant to contracts between the authority and such municipalities, regions and persons; the recovery of resources and resource values from such solid wastes; and the production from such services and resources recovery operations of revenues sufficient to provide for the support of the authority and its operations on a self-sustaining basis, with due allowance for the redistribution of any surplus revenues to reduce the costs of authority services to the users thereof;

"(3) The utilization, through contractual arrangements, of private industry for implementation of some or all of the requirements of the state solid waste management plan and for such other activities as may be considered necessary, desirable or convenient by the authority;

"(4) Assistance with and coordination of efforts directed toward source separation for recycling purposes; and

"(5) Assistance in the development of industries and commercial enterprises within the state of Connecticut based upon resources recovery, recycling and reuse. These purposes shall be considered to be operating responsibilities of the authority, in accordance with the state solid waste management plan, and are to be considered in all respects public purposes. It is the intention of this chapter that the authority shall be granted all powers necessary to fulfill these purposes and to carry out its assigned responsibilities and that the provisions of this chapter, itself, are to be construed liberally in furtherance of this intention."

On January 29, 1989, the plaintiffs appealed the commission's decision to the Superior Court pursuant to General Statutes § 8-9.[8] The court held a preliminary hearing on the issue of standing to determine whether CRRA and Meriden had been aggrieved by the commission's decision. The court was concerned that solid waste disposal might be a protected nonconforming use of the tract, in which case the plaintiffs could not be harmed by the regulation prohibiting solid waste disposal in an aquifer protection district. At the hearing, the plaintiffs filed a motion to continue the appeal until they could pursue with local zoning authorities the issue of whether solid waste disposal was a valid nonconforming use of the tract. See footnote 12. The court granted the motion.

On February 22, 1990, CRRA and Meriden requested a certificate of zoning compliance[9] from Linda Bush, the Wallingford zoning enforcement officer. By a letter dated March 14, 1990, Bush informed CRRA and Meriden that she would not issue a certificate because use of the tract for solid waste disposal was a nonconforming use that had been unlawfully expanded. CRRA and Meriden appealed Bush's decision to the board. Following a May 21, 1990 public hearing, the board voted to sustain Bush's decision.

---

[8] General Statutes § 8-9 provides: "Appeals from zoning commissions and planning and zoning commissions may be taken to the superior court and, upon certification for review, to the appellate court . . . ."

[9] General Statutes § 22a-208b provides: "The commissioner of environmental protection may issue a permit to construct a facility for the land disposal of solid waste pursuant to section 22a-208a, provided (1) the applicant submits to the commissioner a copy of a valid certificate of zoning approval, special permit, special exception or variance, or other documentation, establishing that the facility complies with the zoning requirements adopted by the municipality in which such facility is located pursuant to chapter 124 or any special act or (2) the council has approved a negotiated agreement or issued an arbitration award in accordance with section 22a-285g."

The plaintiffs appealed the board's decision to the Superior Court pursuant to General Statutes § 8-8 (b).[10] The court granted a motion made by CRRA and Meriden to consolidate this appeal with the first appeal and held a hearing on both appeals on June 11, 1991. In a lengthy memorandum of decision dated January 8, 1992, the trial court rendered judgment for CRRA and Meriden in each appeal. The defendants filed petitions for certification to appeal to the Appellate Court.[11] The Appellate Court granted the petitions, and we transferred the appeals to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

In the first appeal, the commission claims that the trial court incorrectly determined that: (1) the regulation prohibiting solid waste disposal over an aquifer is an invalid exercise of the town's police power; (2) the regulation did not comply with the plan of development; (3) the regulation is preempted by state solid waste and water quality statutes; and (4) the commission's decision was not supported by the record. In the second appeal, the board and Bush claim that the trial court improperly substituted its judgment for that of the board in concluding that solid waste disposal was a valid nonconforming use of the tract, and that the entire tract could be used for this purpose. We agree with the defendants in both appeals and therefore reverse the judgments of the trial court.

I

We consider first the appeal in the second case, *Connecticut Resources Recovery Authority v. Zoning Board*

[10] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a board may take an appeal to the superior court . . . ."

[11] General Statutes § 8-8 (o) provides in relevant part: "There shall be no right to further review [of a zoning board decision] except to the appellate court by certification for review . . . ." See also footnote 8.

*of Appeals* (Docket No. 14585).[12] The defendants claim
that the trial court improperly substituted its judgment

[12] We discuss the second case first in order to make clear that we have
jurisdiction to consider the first case. The trial court suggested that the
plaintiffs would not have standing to appeal in the first case if solid waste
disposal were a protected nonconforming use of the tract. During the hear-
ing on the consolidated appeals, the trial court told the plaintiffs, in regard
to the first appeal, that "[i]f you had a valid pre-existing nonconforming
use which could not be affected by zoning then in that case you could not
establish aggrievement. The only way you can establish aggrievement is
if I rule against you in the . . . [second] case."

In its memorandum of decision, the trial court sustained the plaintiffs'
appeal in the second case, ruling that solid waste disposal was a valid non-
conforming use of the entire tract. This removed the basis for standing
in the first appeal as originally contemplated by the trial court. The trial
court nevertheless proceeded to decide the appeal in the first case, hold-
ing that the plaintiffs had standing because they "may be obligated to con-
duct certain activities as ordered by the Commissioner of Environmental
Protection, which may constitute solid waste disposal activities barred by
the aquifer protection regulations."

Proof of aggrievement is essential to a court's jurisdiction of a zoning
appeal. *Hughes* v. *Town Planning & Zoning Commission*, 156 Conn. 505,
509, 242 A.2d 705 (1968). The test for determining aggrievement is a two
part inquiry: "first, the party claiming aggrievement must successfully dem-
onstrate a specific personal and legal interest in the subject matter of the
decision, as distinguished from a general interest . . . . Second, the party
claiming aggrievement must successfully establish that this specific per-
sonal and legal interest has been specially and injuriously affected by the
decision. . . ." (Internal quotation marks omitted.) *Cannavo Enterprises,
Inc.* v. *Burns,* 194 Conn. 43, 47, 478 A.2d 601 (1984).

We hold that the plaintiffs had standing in the first case. "Aggrievement
is established if there is a possibility, as distinguished from a certainty, that
some legally protected interest . . . has been adversely affected." (Internal
quotation marks omitted.) *State Medical Society* v. *Board of Examiners in
Podiatry,* 203 Conn. 295, 300, 524 A.2d 636 (1987); see also *Hall* v. *Plan-
ning Commission,* 181 Conn. 442, 445, 435 A.2d 975 (1980). Our reversal
in the second case, infra, makes apparent the possibility that solid waste
disposal would be ruled an invalid nonconforming use of the property. There-
fore, even after the trial court ruled in favor of the plaintiffs in the second
case, there remained a sufficient possibility of injury to establish aggrieve-
ment in the first case. See *Union Carbide Corporation* v. *Aetna Casualty
& Surety Co.,* 212 Conn. 311, 317, 562 A.2d 15 (1989) (though there would
be no aggrievement if the trial court's decision were upheld, the fact that
the trial court's decision could conceivably be overturned gave this court
jurisdiction to consider the appeal).

for that of the board in determining that solid waste disposal is a protected nonconforming use of the entire tract. We agree.

## A

"It is a general principle in zoning that nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit. In no case should they be allowed to increase." *Salerni* v. *Scheuy,* 140 Conn. 566, 570, 102 A.2d 528 (1954); see also *Essex Leasing, Inc.* v. *Zoning Board of Appeals,* 206 Conn. 595, 607, 539 A.2d 101 (1988) (the goal of zoning is to abolish nonconforming uses as quickly as justice will tolerate). While "a mere increase in the amount of business done pursuant to a nonconforming use is not an illegal expansion of the original use," a "change in the character of a use . . . does constitute an unlawful extension . . . ." *Helicopter Associates, Inc.* v. *Stamford,* 201 Conn. 700, 716, 519 A.2d 49 (1986). In *Zachs* v. *Zoning Board of Appeals,* 218 Conn. 324, 332, 589 A.2d 351 (1991), this court identified three factors to be used in determining whether an activity is within the scope of a nonconforming use: "(1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property."

Bush refused to issue a certificate of zoning compliance for the 138 acre tract because she believed that solid waste disposal was a nonconforming use that had been illegally expanded.[13] In their appeal of this deci-

---

[13] The plaintiffs argued before the trial court, and the trial court held, that the Wallingford zoning regulations did not prohibit a change in the use of unimproved land. The plaintiffs do not, however, make this argument on appeal.

sion to the board, CRRA and Meriden presented evidence indicating that the solid waste disposal site had been expanded since 1958 into vacant areas of the tract and into the area where the sewage lagoons had been located.[14] They insisted, however, that this was neither a change in use nor an unlawful expansion of the solid waste disposal use. The plaintiffs argued that the sewage lagoons were a form of solid waste disposal both generally and under state statutes;[15] therefore, expanding the solid waste disposal site to this portion of the tract did not change the use of this portion, and did not illegally extend the waste site.

In support of their argument that the entire tract could be used for solid waste disposal, the plaintiffs contended before the board that the other uses of the tract—i.e., the sewage lagoons, and the alleged stump and brush disposal—were also essentially solid waste disposal uses. They also introduced evidence that there had been industrial waste on the tract in 1958. Finally, they argued that the gravel pit was a solid waste disposal use because it provided cover material and opened up holes in the ground where waste could be deposited.

Other speakers at the hearing contradicted the plaintiffs' arguments. Bush claimed that the sewage lagoons and the solid waste disposal site were distinctly different uses. She pointed out that the state has different

---

[14] These lagoons were used until the 1960s, when the sewage treatment plant was renovated. They were removed in the late 1970s and early 1980s, after a new treatment plant was built.

[15] The plaintiffs rely principally on General Statutes § 22a-207, which provides in relevant part: "DEFINITIONS. For the purposes of this chapter and chapter 103b . . .

"(3) 'Solid waste' means unwanted or discarded solid, liquid, semisolid or contained gaseous material, including, but not limited to, demolition debris, material burned or otherwise processed at a resources recovery facility or incinerator, material processed at a recycling facility *and sludges or other residue from a water pollution abatement facility, water supply treatment plant* or air pollution control facility . . . ." (Emphasis added.)

permitting systems for solid waste disposal facilities and sewage treatment facilities.[16] Further, a witness for the plaintiffs testified that while solid waste and sludge may be disposed of using the same permit, the sludge was removed from the sewage lagoons and disposed of elsewhere on the tract. This necessarily weakened the plaintiffs' argument that the sewage lagoons themselves were a solid waste disposal use.

The plaintiffs' argument that the other uses of the tract were essentially solid waste disposal uses was also contradicted at the hearing. Bush testified that, until the early 1970s, stump and brush material had not been considered solid waste, and frequently had been used as clean fill in people's backyards. Further, Bush produced a letter from an individual who lived near the tract in the late 1950s and early 1960s that claimed there had been a sawmill operating on the tract during these years, and disclaimed any notion that stump disposal had been a use of the tract during this time. Bush also offered evidence that there had been a lumber storage facility near the sawmill. This evidence tended to refute the plaintiffs' argument that a portion of the tract was used for stump and brush disposal.

With regard to the industrial waste disposal use, Bruce Marks, a former Meriden employee and witness for the plaintiffs, testified that industrial waste was found on only a small part of the tract and that it had since been removed. He also stated that "[i]ndustries had their own landfill within the City of Meriden." Meriden farmers had a separate dump as well. Finally, Marks admitted that sand from the gravel pit was used

---

[16] Solid waste facilities are governed by the Solid Waste Management Act, General Statutes § 22a-207 et seq. Sewage treatment facilities are governed by the Water Pollution Control Act, General Statutes § 22a-416 et seq.

for road sanding, tarring and other municipal uses as well as for cover material at the solid waste disposal site.

There was also testimony presented at the hearing regarding the alleged contamination of Wallingford's water supply by the enlarged solid waste disposal site. Bush pointed out that CRRA had contracted to dispose of the waste from five different municipalities on the tract.

Following the hearing, the board voted to dismiss the plaintiffs' appeal.[17] The board did not formally state any reasons for its decision. The trial court was therefore required to search the record for reasons supporting the board's decision. See, e.g., *Protect Hamden/ North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* 220 Conn. 527, 544–45, 600 A.2d 757 (1991). The trial court assumed that the reasons for the board's decision were that: (1) "the tract contained a number of uses"; and (2) "expansion of the landfill within the area of the sewage lagoons was an illegal expansion." After reviewing the record, the trial court concluded that, as to the first reason, "there is insufficient evidence to support any conclusion other than that the principal use of the premises was, at the adoption of zoning, and is, solid waste disposal." The trial court discounted the sawmill and gravel pit as temporary uses, and the sewage lagoons as "a use accessory to the sewage disposal plant." This left only the solid waste disposal, the alleged stump and brush disposal, the sludge disposal, and the industrial waste disposal. The trial court stated that this evidence made it "clear that the landfill operation was the principal use of the tract." The trial court then rejected

---

[17] The transcript of the hearing indicates that the board originally voted to uphold a cease and desist order issued by Bush. The minutes of the hearing were later corrected, however, to clarify that the vote was to uphold Bush's decision not to issue a certificate of zoning compliance.

the second reason—illegal expansion of the solid waste disposal site into the area formerly occupied by the sewage lagoons—deciding that it was moot because nothing could be done to restore the solid waste disposal site to its former boundaries.

We conclude that the trial court improperly exceeded its scope of review. The party claiming the benefit of a nonconforming use bears the burden of proving that the nonconforming use is valid. *Cummings* v. *Tripp,* 204 Conn. 67, 82–83, 527 A.2d 1230 (1987). "The legality of an extension of a nonconforming use is essentially a question of fact." (Internal quotation marks omitted.) Id., 84; *Helicopter Associates, Inc.* v. *Stamford,* supra, 716. "It is well settled that a court, in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency or to make factual determinations on its own." *Farrington* v. *Zoning Board of Appeals,* 177 Conn. 186, 190, 413 A.2d 817 (1979); see also *General Dynamics Corporation* v. *Groton,* 184 Conn. 483, 495, 440 A.2d 185 (1981) (it is the function of the administrative committee, not the trial court, to find facts). The trial court must uphold the board's decision if it is reasonably supported by the record. *DiBlasi* v. *Zoning Board of Appeals,* 224 Conn. 823, 829–30, 624 A.2d 372 (1993).

On the basis of the evidence submitted, the board could reasonably have found that sewage lagoons and solid waste disposal are different uses, and that therefore the solid waste disposal site had been illegally expanded. In view of the contamination of Wallingford's drinking water supply and CRRA's proposed use of the tract to service five municipalities, the board could also reasonably have found that large-scale solid waste disposal operations have a substantially more dangerous effect on the surrounding area than the scattered uses that existed in 1958. Thus, it would have been reasonable for the board to have concluded under

*Zachs* v. *Zoning Board of Appeals,* supra, that the expanded disposal site was not within the scope of a nonconforming use and could not be legally countenanced. Accordingly, the trial court incorrectly substituted its judgment for that of the board.

## B

The trial court also held that under the "natural expansion doctrine," the entire 138 acre tract could be used for solid waste disposal.[18] In general, under this doctrine, a valid nonconforming use can be expanded beyond the area of a tract that it occupied when zoning was adopted. The jurisdictions that have considered this doctrine either require that there be an objective manifestation of intent to appropriate the remainder of the parcel for the use at the time of nonconformity; see, e.g., *Stephan & Sons, Inc.* v. *Anchorage,* 685 P.2d 98, 102 (Alaska 1984); *Town of Wolfeboro* v. *Smith,* 131 N.H. 449, 453, 556 A.2d 755 (1989); or have applied it to factual situations where intent to appropriate the entire parcel was not at issue.[19] See, e.g., *McCaslin* v. *Monterey Park,* 163 Cal. App. 2d 339, 349–50, 329 P.2d 522 (1958); *Du Page* v. *Elmhurst-Chicago Stone Co.,* 18 Ill. 2d 479, 483–85, 165 N.E.2d 310 (1960).

In one case relied upon by the plaintiffs, *Chartiers* v. *W. H. Martin, Inc.,* 518 Pa. 181, 188, 542 A.2d 985 (1988), the court found specifically that the owner of a landfill "was not changing the intended use of the property, and was not expanding the use beyond the area which was contemplated for such use at the time the landfill became nonconforming." In another case, the court found that "[n]o part of the land was devoted

---

[18] Specifically, the trial court held that there was insufficient evidence in the record to support the board's rejection of this doctrine.

[19] Intent to appropriate the tract for solid waste disposal is a major issue in this appeal. It was also a major issue at the hearing before the zoning board of appeals. Therefore, this line of cases is inapplicable.

to a use other than the continuous operation of a sand and gravel business." *Syracuse Aggregate Corporation* v. *Weise,* 72 App. Div. 2d 254, 259, 424 N.Y.S.2d 556, aff'd, 51 N.Y.2d 278, 414 N.E.2d 651, 434 N.Y.S.2d 150 (1980). Further, "the entire parcel of land is dedicated to the removal of deposits in the soil and the manifestation that it is so devoted is unmistakably discernible." Id., 260. In two other cases, the Supreme Judicial Court of Massachusetts held that where a gravel pit occupied only a small portion of the parcel at issue at the time of nonconformity, the natural expansion doctrine did not apply. See *Billerica* v. *Quinn,* 320 Mass. 687, 688–90, 71 N.E.2d 235 (1947); *Burlington* v. *Dunn,* 318 Mass. 216, 223, 61 N.E.2d 243, cert. denied, 326 U.S. 739, 66 S. Ct. 51, 90 L. Ed. 441 (1945).[20]

The board could reasonably have found that the evidence before it did not demonstrate the requisite intent. The plaintiffs argued to the board and presented evidence that, in 1958, the intent of the city of Meriden was to use the entire tract as a solid waste disposal site,

[20] The plaintiffs contend that *DeFelice* v. *Zoning Board of Appeals,* 130 Conn. 156, 32 A.2d 635 (1943), supports their claim that the entire 138 acre tract may be used for solid waste disposal. *DeFelice* involved a twelve acre tract of land that was being utilized as a commercial sand pit when, in 1936, it was placed in a residential zone. Id., 157. The owner sought a permit to install a wet sand classifier, a steel structure over a hundred feet long and forty feet high that would use water to pump sand out of the sand pit at a high rate of speed. Id., 157, 159–60. The town zoning inspector denied the permit application and the zoning board of appeals upheld this decision. Id., 157. The owner appealed to the Court of Common Pleas, which upheld the board's decision. Id. This court held that the board could properly have determined that installation of the wet sand classifier would be a departure from the original nature and purpose of the use, and therefore an illegal extension of it. Id., 163. Although there is language in the case to the effect that a use need not have utilized an entire tract at the time of nonconformity to be considered an existing use of the tract; id., 161; the issue of expansion of a nonconforming use was not before the court in *DeFelice*. Therefore, this case is inapposite and does nothing to further the plaintiffs' position.

and that the tract had been appropriated for that purpose.[21] To the contrary, the board, in rejecting these claims, could have found that the sewage lagoons had been the primary use of the tract, and that this use was distinct from the solid waste disposal use. There was testimony at the hearing that the gravel pit was considered a distinct operation in 1958, not part of the solid waste use, and that the entire tract was not suitable for use as a solid waste disposal site. As previously noted, solid waste disposal occupied only a small portion of the tract in 1958.

We hold that the board could reasonably have concluded that the plaintiffs had failed to demonstrate an intent to appropriate the entire tract for solid waste disposal in 1958, and that the natural expansion doctrine was therefore inapplicable.[22] The trial court therefore improperly substituted its judgment in reversing the board's decision.

## II

We next consider the first case, *Connecticut Resources Recovery Authority* v. *Planning & Zoning*

---

[21] Counsel for the plaintiffs summarized his argument for the board as follows: "Well, my view of this is that if you take one look at the drawing [showing the uses of the property in 1958] . . . you can see that the City of Meriden was using a large part of this tract for disposal purposes. And I think that if that is your conclusion, then it follows that we have a legal nonconforming use that has undergone natural growth. And if you don't see it that way, then you would find that it's not a legal nonconforming use. But you just have to say to yourself, Do you think that the City of Meriden acquired this property and used the property until . . . 1958 . . . for the purposes that it was designated and really intended that this be nothing more than a sand pit, a source of drinking water, and a saw mill? I think it's pretty clear that this was the Meriden Landfill, it was a public dump, and it was a place that was going to be used for disposal of garbage and other refuse."

[22] Because the board could reasonably have concluded that the natural expansion doctrine was inapplicable under the facts of this case, we leave to another day the issue of whether this doctrine should be applied when the requisite intent to appropriate a parcel for a particular use can be demonstrated.

*Commission* (Docket No. 14584).[23] The commission claims that the trial court incorrectly determined that: (1) the regulation prohibiting solid waste disposal over an aquifer is an invalid exercise of the town's police power; (2) the regulation is inconsistent with the plan of development; (3) the regulation is preempted by state solid waste and water quality statutes; and (4) the commission's decision was not supported by the record. We consider these arguments in turn.

A

The trial court held that the blanket prohibition of solid waste disposal in an aquifer protection zone is an invalid exercise of the police power. The plaintiffs argue that General Statutes § 8-2[24] empowers the commis-

---

[23] The defendants argued before the trial court that the plaintiffs would not have standing to appeal the solid waste prohibition if solid waste disposal were *not* a valid nonconforming use of the tract. Their reasoning was that, if solid waste disposal were not a valid nonconforming use, then the plaintiffs would not have any legal right to use their property for this purpose because the tract is in a residential zone. Therefore, they would have no legal interest in having the solid waste prohibition deleted from the zoning regulations, and no standing to appeal the commission's decision. See footnote 12.

Although we uphold the board's determination that solid waste disposal is not a valid nonconforming use of the tract, we do not believe that this deprives the plaintiffs of standing to appeal the commission's decision. The defendants themselves have suggested that deletion of the solid waste prohibition would give the plaintiffs a right to apply for a special permit to use additional portions of the tract for solid waste disposal. Thus, even though solid waste disposal is not a valid nonconforming use, the plaintiffs' legal interests have been injuriously affected by the commission's refusal to delete the provision.

[24] General Statutes (Rev. to 1989) § 8-2 provides in relevant part: "The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes, including water-dependent uses as defined in section 22a-93, and the height, size and location of advertising signs and billboards. Such zoning commission may divide

sion only to regulate land use, not to prohibit certain uses, and that the prohibition of solid waste disposal over an aquifer lacks a reasonable relation to the public health, safety and welfare. We disagree.

To challenge an ordinance successfully, a party must establish the invalidity of the ordinance beyond a reasonable doubt. *Lizotte* v. *Conservation Commission,* 216 Conn. 320, 337, 579 A.2d 1044 (1990). Section 8-2 authorizes local authorities to regulate land use through

the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. . . . Zoning regulations may be made with reasonable consideration for the protection of historic factors and shall be made with reasonable consideration for the protection of existing and potential public surface and ground drinking water supplies. . . . Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. . . ."

Section 8-2 has been amended many times in recent years. In 1992, it was amended to require that "in adopting [zoning] regulations the commission shall consider the plan of development prepared under section 8-23," rather than the comprehensive plan. Public Acts 1992, No. 92-50.

zoning, and specifically requires them to do so "with reasonable consideration for the protection of existing and potential public surface and ground drinking water supplies." We have said that "when a statute authorizes a municipality to regulate a certain activity, a prohibition of that activity will be valid if it is rationally related to the protection of the community's public health, safety and general welfare." *Beacon Falls* v. *Posick*, 212 Conn. 570, 583, 563 A.2d 285 (1989); see also *Lizotte* v. *Conservation Commission*, supra, 336.

In *Lizotte* v. *Conservation Commission*, supra, 322–23, the plaintiffs challenged the validity of a local regulation prohibiting the location of a septic system within 150 feet of an inland wetland or watercourse. They contended that the regulation was invalid because the enabling statute authorized only "necessary" regulations and the blanket prohibition was not necessary. Id., 336. We held that prohibitions of activities are within the police power of a municipality if they are rationally related to the protection of the public health, safety and welfare, and that a municipality may rationally conclude that prohibition of a risky activity is more appropriate than case-by-case analysis. Id., 334, 337. In *Beacon Falls* v. *Posick*, supra, 586, we concluded that a townwide ban of garbage dumps was a valid exercise of the police power.[25]

---

[25] The plaintiffs contend that *Builders Service Corporation* v. *Planning & Zoning Commission*, 208 Conn. 267, 545 A.2d 530 (1988), supports their position that the solid waste prohibition is an invalid exercise of the police power. In that case, this court held that an ordinance that prescribed minimum floor area requirements without reference to occupancy was not rationally related to any legitimate objective of zoning and was therefore invalid. Id., 306. Because we hold, infra, that the solid waste prohibition is rationally related to the protection of groundwater and to the public health, safety and welfare, *Builders Service Corporation* is inapposite. Furthermore, *Builders Service Corporation* "did not purport to overrule our well established case law on the proper scope of judicial review, in a zoning appeal, of a local zoning commission's exercise of its legislative discretion in amending its zoning regulations regarding commercial development. . . . [Nor

The record before the trial court indicated that, at the time it adopted the solid waste prohibition, the commission was aware that the Meriden owned tract was a suspected source of contamination of Wallingford's water supply. A document issued by a regional planning authority in 1980 specifically recommended that solid waste disposal operations over the aquifer should be suspended.

We have long held that "[a]n agency which has the authority to enact regulations is vested with a large measure of discretion, and the burden of showing that the agency has acted improperly rests upon the one who asserts it." *Aaron* v. *Conservation Commission,* 183 Conn. 532, 537, 441 A.2d 30 (1981); see also *Lizotte* v. *Conservation Commission,* supra, 337. Local commissions "are closest to the circumstances and conditions which create the problem and shape the solution. . . . [I]n determining claims of error in such matters, [c]ourts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their action." (Citations omitted; internal quotation marks omitted.) *Frito-Lay, Inc.* v. *Planning & Zoning Commission,* 206 Conn. 554, 573, 538 A.2d 1039 (1988). We conclude that Wallingford's prohibition of solid waste disposal over an aquifer is a valid exercise of its police power that is rationally related both to protection of the groundwater and to the public health, safety and welfare. Accordingly, we reverse the trial court's holding to the contrary.[26]

---

did it] purport to permit a trial court, in such an appeal, to undertake its own process of weighing the competing bodies of evidence regarding the factors delineated in [General Statutes] § 8-2." *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* 220 Conn. 527, 553, 600 A.2d 757 (1991).

[26] We think it useful for the future to point out that the plaintiffs mount a procedurally unique challenge to the legislative discretion of the commission. Unlike the situation in *Lizotte* v. *Conservation Commission,* 216 Conn.

## B

The trial court also held that the solid waste ordinance was invalid because it did not comply with Wallingford's plan of development. The trial court noted that the town planning document recommends that an aquifer protection district should be created and "[r]estricted to uses which do not present undue risk of groundwater contamination and prohibiting or controlling those which do, such as, the use, storage, treatment or disposal of hazardous materials including

320, 579 A.2d 1044 (1990), in which the plaintiffs appealed from the *adoption* of a regulation and also brought a declaratory judgment action challenging the validity of the same regulation, the plaintiffs in this case have appealed from the refusal of the commission to *delete* a regulation that the plaintiffs wanted deleted. The regulation that the plaintiffs wanted the commission to delete was enacted in 1985, and has been in effect since then. It is entitled, therefore, to a presumption of validity; that is, in the absence of evidence to the contrary, we "presume that the commission fulfilled, *when it adopted the regulation,* its statutory obligations" pursuant to the statute authorizing the regulation. (Emphasis added.) Id., 334–35. Thus, the record before the commission when it *adopted* the regulation would not necessarily be the same record produced in connection with a much later challenge to the regulation. To allow parties to proceed as the plaintiffs did here would require a zoning authority, when it rejects a proposal to delete a preexisting regulation, to recreate somehow the record that it had before it when the regulation was adopted. Under some circumstances, the record at the time of adoption may well have included the personal knowledge of the commission members, thereby preventing the zoning authority from satisfying such obligation.

Furthermore, it is well established that a zoning authority acting in its legislative, as opposed to its administrative or quasi-judicial, capacity, has a very broad discretion that courts should be extremely wary of disturbing. See, e.g., *Ghent* v. *Zoning Commission,* 220 Conn. 584, 601, 600 A.2d 1010 (1991) ("It is the rare case in which the legislative judgment of what is beneficial to the community can be superseded by that of the judiciary."); *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* 220 Conn. 527, 542–44, 600 A.2d 757 (1991).

In light of these two principles—presumptive validity upon a past record, and very broad legislative discretion—a court should be particularly hesitant to conclude that a zoning authority abused its discretion by declining to delete its own presumptively valid regulation.

storage of road salts or de-icing compounds. . . ." Town of Wallingford Proposed Plan of Development Update, Phase 1 and 2—Summary Report, July, 1983, p. 14. The trial court held that because this plan did not specifically list solid waste disposal as an unduly risky activity, and there was no evidence that the commission considered the Meriden tract a threat to the groundwater at the time it adopted the plan of development, there was nothing in the record to indicate that the prohibition complied with the town plan of development.[27]

We reject the trial court's reasoning and the plaintiffs' concomitant claim on appeal that because the plan provision quoted above specifically lists storage of "road salts" and "de-icing compounds" as unduly hazardous uses, the prohibition of solid waste disposal is necessarily inconsistent with this plan. As the trial court noted, a "plan of development is properly called a master plan. . . . The master plan, in its designation of appropriate uses for various areas in a town, is merely advisory." (Citation omitted.) *Dooley v. Town Plan & Zoning Commission,* 154 Conn. 470, 473, 226 A.2d 509 (1967).

General Statutes § 8-2 directs local authorities to regulate land use through zoning "with reasonable consideration for the protection of existing and potential public surface and ground drinking water supplies." It is clear from the record before the trial court that the Wallingford zoning authorities were aware that the Meriden owned tract was a threat to the groundwater and public health at the time they adopted the solid waste prohibition. We conclude that the solid waste prohibition was consistent both with the plan of development and with the comprehensive plan, which is to be

[27] In a sense, the trial court was placing a burden on the commission to recreate the record before it when the prohibition was first adopted. This was inappropriate, and highlights the concerns we have raised in footnote 26.

found in the scheme of the zoning regulations them-
selves. See *Protect Hamden/North Haven from Exces-
sive Traffic & Pollution, Inc.* v. *Planning & Zoning
Commission,* supra, 551.

C

The trial court also held that the regulation banning
solid waste disposal over an aquifer is preempted by
certain state solid waste and water protection stat-
utes.[28] We disagree.

General Statutes § 22a-208a (b), part of the Solid
Waste Management Act, provides that "nothing in this
chapter or chapter 446e shall be construed to limit the
right of any local governing body to regulate, through
zoning, land usage for solid waste disposal." In *Bea-
con Falls* v. *Posick,* supra, 577–79, we held that this
language demonstrated that the legislature did not
intend to preempt local zoning regulation of solid waste
disposal.

The plaintiffs attempt to distinguish *Beacon Falls* v.
*Posick,* supra, on the grounds that that case involved
a private dump whereas this case involves CRRA, a
public instrumentality. Their argument is unpersuasive,
however, because § 22a-208a (b) references chapter
446e, which is the section of the General Statutes creat-
ing CRRA. Further, in *Beacon Falls* v. *Posick,* supra,
we specifically held "that the legislature intended only
to preempt local zoning authority to the extent that it
conflicted with the operation of a CRRA facility on
property owned by the CRRA prior to May 11, 1984
. . . ." Id., 579.[29] The lease agreement between CRRA

[28] General Statutes § 22a-207 et seq. (Solid Waste Management Act); Gen-
eral Statutes § 22a-257 et seq. (Solid Waste Management Services Act);
and General Statutes § 22a-416 et seq. (Water Pollution Control Act).

[29] The plaintiffs' citation to the state water protection statutes does not
further their preemption argument, because the legislature specifically did
*not* intend to preempt local zoning.

and Meriden was not even formed until late 1985. The trial court therefore incorrectly concluded that the solid waste prohibition was preempted.

## D

Finally, we consider the trial court's conclusion that the commission's decision not to delete the solid waste prohibition was not reasonably supported by the record. The commission furnished two reasons for its refusal to delete the solid waste prohibition: (1) compliance with the town plan of development; and (2) protection of the drinking water supply. The commission claims that the trial court, in rejecting both of these reasons, impermissibly weighed the evidence and substituted its judgment for that of the commission. We agree.

We have often said that "[t]he trial court may not substitute its judgment for the wide and liberal discretion vested in the local authority when acting within its prescribed legislative powers." (Internal quotation marks omitted.) *Frito-Lay, Inc.* v. *Planning & Zoning Commission,* supra, 572–73; see also *Calandro* v. *Zoning Commission,* 176 Conn. 439, 442, 408 A.2d 229 (1979). "[I]t is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency." (Internal quotation marks omitted.) *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* supra, 542–43; *Calandro* v. *Zoning Commission,* supra, 440. "The commission ha[s] the task of weighing th[e] evidence and reaching a conclusion on the merits of the plaintiff's application." *Calandro* v. *Zoning Commission,* supra, 441. "[T]he court may grant relief on appeal only where the local author-

ity has acted illegally or arbitrarily or has abused its discretion." (Internal quotation marks omitted.) *Frito-Lay, Inc.* v. *Planning & Zoning Commission,* supra, 573. "[T]he action of the commission should be sustained if even one of the stated reasons is sufficient to support it." Id., 576.

The commission had before it evidence that the Meriden solid waste disposal site was a suspected source of contamination of Wallingford's water supply. Documents from the state department of environmental protection, expert consultants, and a regional planning authority, and testimony from a member of the legislature's environment committee, all recommended that solid waste disposal operations over the aquifer be suspended. There was also testimony that expansion of the solid waste operations might cause further contamination.

We have said that "a local legislative body may consider the effects that are likely to flow from proposed amendments to its zoning regulations, and may decide, within the proper statutory parameters, that it would be unwise policy for the town to countenance those effects." *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* supra, 548. The plaintiffs conceded at oral argument that, at most, the evidence they presented at the hearing showed that there was a *possibility* that a solid waste disposal site could be operated safely over an aquifer. The trial court ruled that because there was a possibility of compatibility between these two uses, it was irrational for the commission to refuse to delete the blanket prohibition. We disagree.

In *Lizotte* v. *Conservation Commission,* supra, we upheld a blanket prohibition of septic systems within 150 feet of a wetland. We stated: "The commission could reasonably have concluded that, regardless of

whether a specific prohibited activity may or may not adversely affect the town's wetlands, the risk of pollution outweighed in all instances the benefits to be gained by allowing case-by-case analysis of each application for a regulated use." Id., 337. In this case, the commission could reasonably have concluded that although there was a possibility that a landfill could be operated safely in the aquifer protection district, the risk to the town's water supply outweighed any possible benefits.

In sum, we conclude that the local zoning authorities acted properly in refusing to delete the solid waste prohibition and in refusing to issue a certificate of zoning compliance.

The judgments are reversed and the cases are remanded with direction to render judgments dismissing the plaintiffs' appeals.

In this opinion the other justices concurred.