[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Bradley S. Jacobs, appeals a decision of the defendant, Planning and Zoning Board of Appeals of the Town of Greenwich (ZBA), granting an authorization as a special exception and a variance (Appeal No. 7883) filed by Marc P. and Debra A. Shore. The decision of the ZBA followed a public hearing held on March 15, 1995. The ZBA's decision was made pursuant to the Subdivision Regulations of the Town of Greenwich Connecticut (Regulations) §§ 6-95(a)(2)(A), 6-19, 6-20, 6-147(b). The plaintiff commenced the appeal pursuant to General Statutes § 8-8.
On February 1, 1995, Marc and Debra Shore filed an application with the ZBA requesting a special exception to convert an existing dwelling house into an accessory building, and a use variance to allow the existing dwelling to remain standing while the primary dwelling house is completed. (Return of Record, [ROR], Item 1: Application, Appeal #7883-C.) On March 15, 1995 the ZBA held a public hearing to consider the application. (ROR, Item 13: Transcript of Public Hearing.) On March 27, 1995 the ZBA granted the application. (ROR, Item 15: Letter of Decision from Edward A. Manuel, Secretary, Planning and Zoning Board of Appeals.) On March 27, 1995 the approval was published in the Greenwich Times. (ROR, Item 27: Legal Notice.) The defendants ZBA and the Shores were served by the deputy sheriff of Fairfield County on April 7, 1995. The plaintiffs filed an appeal of this decision on April 27, 1995. The Commission filed the return of record on June 27, 1995. On August 18, 1995, the plaintiffs filed their brief, the ZBA filed its brief in reply on September 28, 1995, adopting the brief of the Shores, which was also filed on September 28, 1995. A hearing was held on November 28, 1995, before the court. CT Page 1374-A
On February 1, 1995, the Shores, in order to build a new single family dwelling, applied to the ZBA for a variance and a special exception to convert the existing dwelling to use as a guesthouse, and to reduce it in size, although not less than 1,200 square feet. "A variance of use is necessary to allow the converted accessory structure to remain pending completion of the new residence." (ROR, Item 1.) The current home is in an RA-4 zone. (ROR, Item 1.). The ZBA approved the Shores' application.
The plaintiff appeals the decision of the ZBA on the grounds that the ZBA acted illegally, arbitrarily, and in abuse of its discretion in the following regards: a) the ZBA lacked jurisdiction because the Shores failed to provide the plaintiff with notice of the application and failed to provide the neighbors notice of the necessity of other variances; b) the Shores did not, apply for a special permit to change one non-conforming use to another and would not have met the standard if they had, alleging that the gatehouse was illegally enlarged and did not have a certificate of occupancy; c) the Shores did not apply for variances permitting an accessory use in the front yard which is less than the minimum setback requirement; d) the conditional variances would be difficult to enforce; e) there is no exceptional difficulty or unusual hardship; and f) the ZBA hearing deprived plaintiff of a fair hearing and due process of law.
General Statutes § 8-8 governs appeals taken from the decisions of a zoning board of appeals to the superior court. In order to take advantage of a statutory right of appeal, parties must comply strictly with the statutory provisions that create such a right.Simko v. Zoning Board of Appeals, 206 Conn. 374, 377, 538 A.2d 202
(1988). The statutory provisions are mandatory and jurisdictional in nature and failure to comply will result in dismissal of an appeal. Id., 377.
I. Aggrievement
Aggrievement must be proven in order to establish the court's jurisdiction over a zoning appeal. Connecticut Resources RecoveryAuthority v. Planning Zoning Commission, 225 Conn. 731, 739 n. 12,626 A.2d 705 (1993). An aggrieved person is a "person aggrieved by a decision of a board . . . ." General Statutes § 8-8(a)(1). This section defines "aggrieved person" to include "any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General CT Page 1374-B Statutes § 8-8(a)(1); McNally v. Zoning Commission, 225 Conn. 1, 6,621 A.2d 279 (1993).
At a hearing held before the court on November 28, 1995, the plaintiff provided evidence that his property is within 100 feet of the Shores' property. Therefore, the court found aggrievement pursuant to General Statutes § 8-8(a)(1).
II. Timeliness
Under General Statutes § 8-8(b) an appeal must be commenced within "fifteen days from the date that notice of the decision was published." On March 27, 1995, the approval was published in theGreenwich Times. (ROR, Item 16.) Pursuant to General Statutes §8-8(e), service was made on Carmella Budkins, Town Clerk of Greenwich, and on Barbara Hopkins, Chairman of the ZBA on April 7, 1995. Therefore, the plaintiff's appeal was timely.
"The terms special permit and special exception have the same legal import and can be used interchangeably." Mobil OilCorporation v. Zoning Commission, 30 Conn. App. 816, 819-820,622 A.2d 1035 (1993). "When ruling upon an application for a special permit a planning and zoning board acts in an administrative capacity." Double I Limited Partnership v. Planning ZoningCommission, 218 Conn. 65, 72, 588 A.2d 624 (1991). "The basic rationale for the special permit . . . is that while certain land uses may be generally compatible with the uses permitted as of right in a particular zoning district, their nature is such that their precise location and mode of operation must be individually regulated because of the particular topography, traffic problems, neighboring uses, etc., of the site." (Internal quotation marks omitted.) Whisper Wind Development Corp. v. Planning ZoningCommission, 32 Conn. App. 515, 519, 630 A.2d 108 (1993), aff'd,229 Conn. 176, 640 A.2d 100 (1994). "The zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied." (Internal citations omitted.) Felsman v.Zoning Commission, 31 Conn. App. 674, 678, 626 A.2d 825 (1993).
"Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached." (Citations omitted; internal quotation marks omitted.) DeBeradinis v. Zoning Commission, 228 Conn. 187,198, 635 A.2d 1220 (1994). "In applying the law to the facts of a CT Page 1374-C particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." Double ILimited Partnership v. Planning Zoning Commission, supra,218 Conn. 72. "The burden of proof to demonstrate that the board acted improperly is on the plaintiffs." (Internal quotation marks omitted.) Adolphson v. Zoning Board of Appeals, 205 Conn. 703,707, 535 A.2d 799 (1988). "It is well settled that a court, in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency or to make factual determinations on its own." (Internal quotation marks omitted.) Connecticut Resources Recovery Authority v. Planning Zoning Commission, 225 Conn. 731, 744, 626 A.2d 705 (1993).
As previously stated, the plaintiff appeals the decision of the ZBA on the grounds that the ZBA acted illegally, arbitrarily, and in abuse of its discretion in approving the application in the! following regards: a) the board made no findings to support its decision pursuant to 6-95(a)(2); b) the ZBA lacked jurisdiction because the Shores failed to provide the plaintiff with notice of the application and failed to provide the neighbors notice of the necessity of other variances; c) the Shores did not apply for a special permit to change one non-conforming use to another and would not have met the standard if they had, alleging that the gatehouse was illegally enlarged and did not have a certificate of occupancy; d) the Shores did not apply for variances permitting an accessory use in the front yard which is less than the minimum setback requirement; e) the conditional variances would be difficult to enforce; f) there is no exceptional difficulty or unusual hardship; and g) the ZBA hearing deprived plaintiff of a fair hearing and due process of law.
I. Non-Conforming Use.
The plaintiff argues the Gatehouse was illegally enlarged without a certificate of occupancy which resulted in an illegal non-conforming use, and therefore the defendants were changing one illegal non-conforming use for another, and needed a special permit to do so. The defendants argue that the gatehouse has always been used as a residence, and will continue to be used as a residence, therefore the Shores have never proposed to change a non-conforming use.
The plaintiff cites Regulations § 6-141 which states, in pertinent part, "[a] non-conforming building, lot or use, or the CT Page 1374-D building in which a non-conforming use occurs, may not be changed, altered or added to except in accordance with the following: (1) . . . A non-conforming building, lot or use, or the building in which a non-conforming use occurs, may be changed to another non-conforming use only if after application for Special Permit, the Commission finds that said change meets the standards of Sections 6-15 and 6-17 and also find said changed use is not more detrimental to the neighborhood than the existing use."
In order to fall within the above statute, the court must find the gatehouse to have been a non-conforming use. The addition was erected without a permit. (ROR, Item 13: Transcript of Public Hearing, p. 97.) Thus, there was no certificate of occupancy as required by § 6-18. However, "[n]on-conforming [u]se shall mean a building or land, the use of which does not conform to the use regulations for the zone in which it is situated." § 6-5(38). Furthermore, a non-conforming use "is not the same as an illegal use or use allowed by variance." R. Fuller, Land Use Law and Practice 841 (1993). The gatehouse is situated in an RA-4 residential zone. (ROR, Item 1.) The use regulations for RA-4 subdivisions detail the types of uses permitted and not permitted. Regulations, §§ 6-93 — 6-96. A violation of an occupancy ordinance may be illegal, but is not mentioned in the use regulations for RA-4 subdivisions, and therefore does not affect the use of the building within the meaning of § 6-5(38).
The gatehouse is currently used as a residence. (ROR, Item 13, p. 96). The gatehouse has been used as a residence since before 1926. (ROR, Item 10: Great Estates of Greenwich, p. 160.) The Shores are not proposing to change the use of the house to an illegal use, they are proposing to change the home to a residential guest house, or accessory building. (ROR, Item 1; ROR, Item 13, p. 98-99.) Such an accessory use is explicitly permitted under Regulations § 6-95 and 6-146, entitled Use of Accessory Building As Residence: Guest Houses. "Any accessory building on the same lot with a main residence building shall not be used for residence purposes except in the RA-4, RA-2, RA-1, R-20 or R-12 zones . . . ." The Shores are changing one conforming use for another which does not require a permit.
Jacobs next argues that changing the home from a principal dwelling to an accessory building is a change of use, and he citesSherman v. Planning and Zoning Board of Appeals, 13 Conn. App. 699,706, 539 A.2d 588 (1988). "Here, the [structure in question] was being used as a principal dwelling and could not be changed to an CT Page 1374-E accessory building without conforming to the town's regulation for such buildings." The court made no finding as to whether the change went to a change of use, it held that the physical characteristics had to conform to the requirements for accessory uses. Furthermore, "[t]he prohibition of expansion of nonconforming uses applies only to the aspect of the use or structure which is nonconforming." Fuller, supra, 840. See alsoPetruzzi v. Zoning Board of Appeals, 176 Conn. 479, 408 A.2d 243
(1979) (permitting the owner to change the use of the structure from one permitted use to another although the building no longer satisfied set-back requirements, commenting that none of the existing nonconformities were extended.) The Shores concede in their brief that the property is physically nonconforming (Brief of Defendants Shore, p. 12), but the physical nonconformity is not changing, and the gatehouse is being changed from one conforming use to another, which does not require a special permit.
II. Zoning Variances
Jacobs next argues that the defendants have failed to apply for required variances because the property does not conform to two zoning regulations as it is within the front yard setback line and it is an accessory use in a front yard. The defendants concede that the nonconformities exist, but argue they have existed for decades, and pursuant to General Statutes §§ 8-2 and 8-13a, the nonconformities are permitted to continue. (Defendants' Brief, p. 16).
General Statutes § 8-2 provides in pertinent part, "regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations." General Statutes § 8-13a provides, "[w]hen a building is so situated on a lot that it violates a zoning regulation of a municipality which prescribes the location of such a building in relation to the boundaries of the lot . . . and when such building has been situated for three years without the institution of an action to enforce such regulation, such building shall be deemed a nonconforming building in relation to such boundaries."
The gatehouse was built in 1910. (ROR, Item 13, p. 93). The Building Zoning Regulations were adopted in 1926. Regulations, p. 1. There is no evidence in the records that the nonconformities listed above have been changed. The setback and frontyard violations make the gatehouse a nonconforming building, and variances are not required. CT Page 1374-F
III. Lack of jurisdiction
Jacobs next argues that the ZBA lacked jurisdiction because the Shores failed to provide the plaintiff with notice of the application and failed to provide the neighbors notice of the necessity of other variances. At the hearing on November 28, 1995, the plaintiff dropped its appeal on the ground of lack of notice to plaintiff, but continued its objection regarding lack of notice for applications that were not filed. Since the applications for other variances were not required, notice was not required.
IV. Conditional Variance
Jacobs next argues that the conditional variance, allowing the gatehouse to remain standing pending completion of the principal dwelling, would be difficult to enforce and there is no exceptional difficulty or unusual hardship demonstrated. The board held "there is a hardship and practical difficulty involved in the strict application of the Regulations which would require either the demolition of the existing dwelling structure . . . or prevent the construction of the proposed new dwelling . . . . The Board notes that all parties agreed that the existing dwelling . . . is of historical interest as the original gatehouse to the Seabury Estate." (ROR, Item 15: Letter of Decision.) The board then granted the variance on the condition that the new dwelling be completed within two years after the commencement of construction of such dwelling, and concluded that such variance can be granted without "detriment to the public welfare or impairment to the integrity of the Building Zoning Regulations." (ROR, Item 15.) The variance is of limited duration, and after two years it will be clear whether or not the principal dwelling has been completed, and whether or not the gatehouse has been renovated to be a guesthouse. Therefore, the variance is not difficult to enforce.
"It is well established . . . that the granting of a variance must be reserved for unusual or exceptional circumstances." Bloomv. Zoning Board of Appeals, 233 Conn. 198, 206, 658 A.2d 559
(1995); § 8-6(a)(3). Regulations § 6-19(a)(3) require a finding that the special circumstances do not generally apply to other property and the variance can be granted without impairment to the public welfare or integrity of the regulations. Jacobs argues that the hardship found by the board was created by the Shores. The hardship "must arise from circumstances beyond the control of the CT Page 1374-G property owner seeking the variance. The hardship must originate in the regulation or ordinance and arise from the application of the regulation or ordinance to the subject property." Bloom v.Zoning Board of Appeals, supra, 209-210. The board had evidence of hardship before it, and the court therefore cannot determine that the board acted illegally and arbitrarily. Strict application of the zoning ordinance would require the Shores to remove the gatehouse, a gatehouse which appears to be of historic interest. (ROR, Item 11: Letter from Claire Vanderbilt, Chairman of the Historical Society of the Town of Greenwich.)
V. Standards under Regulation § 6-95(a)(2)(A)
The Regulations require that in granting a special exception, the board must consider the standards of § 6-20(c), 6-17 (d)(4), (5), (6), (9) and that the accessory structure "by virtue of its scale, design, size or location on the site is compatible with its zone and individual or in combination with other accessory structures, maintains the appearance of being subordinate to the principal structure." Regulations, § 6-95(a)(2)(A). The board did not enumerate the above standards in its decision. (ROR, Item 15.)
The issue is whether the evidence substantially supports the commission's decision. DeBeradinis v. Zoning Commission, supra,228 Conn. 198. The special exception before the board was limited, it did not involve the construction of the principal dwelling, but merely the reduction in size of the guesthouse. (ROR, Item 1.) The standards enumerated above require consideration of the effect on adjacent areas, obstruction of views, open space, compatibility, traffic, physical hazard, nuisance, and harmful waste material. The board heard evidence of the aesthetic qualities of the gatehouse (ROR, Item 10; ROR, Item 11), the nature of the surrounding area with photographs and drawings of the home (ROR, Item 13, p. 92-97; ROR, Item 2: Photocopies of two aerial photographs; ROR Item 3: Site plans, floor plans and elevations of Shore Residence; Item 6, Copies of photographs; ROR, Item 18a, Album of Photographs.), and a survey completed in 1982 concluding that without changes, there is no impact on the region in terms of hydrology or soil and that the compliance standards are not; applicable to the situation. (ROR, Item 13, p. 139, 166; Item 14, Exhibit H.) The plaintiff presented evidence in opposition, although much of the evidence was relevant to construction of the principal dwelling. (ROR, Item 13, p. 102, 105, 108 discussing proposed new home, p. 163-165, suggesting studies in the event of new construction). Given the limited nature of the application, CT Page 1374-H which was to reduce the size of the gatehouse, many of the standards are simply not relevant, and there is substantial evidence in the record to support the board's decision.
VI. Due Process
Jacobs argues that he was denied due process of law because the board acted with "extreme and unwarranted hostility towards plaintiff's counsel" by interrupting plaintiff's counsel and not allowing him to respond to questions asked of him by the board. "Due process of law requires not only that there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence." Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 536, 525 A.2d 940 (1987). The hearing transcript contains 77 pages of testimony by the plaintiff, his counsel, and his witnesses. The transcript does not reveal that the board limited plaintiff's or his counsel's presentation, or restricted the number of witnesses counsel could call. Plaintiff's counsel's presentation fills 45 pages of the transcript. Plaintiff submitted a 25 page brief in opposition to the appeal with 23 attachments. The plaintiff had ample opportunity to be heard and to produce evidence. Accordingly, the plaintiff received a fair hearing.
For all the foregoing reasons, the plaintiff's appeal is dismissed.
KARAZIN, J.