JACQUELINE RAFFAELE ET AL. *v.* PLANNING AND ZONING BOARD OF APPEALS OF THE TOWN OF GREENWICH ET AL.

GEORGE H. BROWN ET AL. *v.* PLANNING AND ZONING BOARD OF APPEALS OF THE TOWN OF GREENWICH ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued December 4, 1968—decided January 22, 1969

*S. Floyd Nagle,* for the appellant (defendant Rocky Point Club, Inc.) in each case.

*A. William Mottolese,* for the appellant (named defendant) in each case.

*Robert M. Wechsler,* with whom was *T. Ward Cleary,* for the appellees (plaintiffs) in the first case.

*Julius B. Kuriansky,* for the appellees (plaintiffs) in the second case.

ALCORN, J. Under the zoning regulations of the town of Greenwich, the principal uses permitted in an R-12 zone are restricted to one single-family dwelling per lot and designated public uses engaged in by the state or federal government. Greenwich Bldg. Zone Regs. § 6 (a) (1964). Certain other uses are permitted when authorized by the board of appeals as special exceptions, and these include "[c]lubs . . . not open to the general public and not operated for commercial profit." § 6 (a) (3) (b). The building zone regulations permit any use which did not conform to the provisions of the regulations at the time the regulations were amended or adopted to be continued, changed or altered subject to certain conditions. § 15. So far as material the condi-

tions provide that "(1) A non-conforming use of land or structure shall not be changed to any other non-conforming use which is more detrimental to the neighborhood, and no structure shall be added to unless such addition and the use made thereof shall conform with the provisions of the Building Zone Regulations . . . ." § 15 (a) (1).

It is conceded by all parties that the Rocky Point Club, Inc., hereinafter referred to as the club, has maintained a private, nonprofit club on a tract of 1.6 acres of land as a nonconforming use in an R-12 zone for many years. The club has never sought to have the use and occupation of its premises declared to be a permitted use under the special exception provision of the building zone regulations. Access to the club property is gained by means of a private road nineteen feet wide. The identity of the owner or owners of the road does not appear. The club property is located in an elaborate waterfront section of the town described as a high-class residential area.

The club appealed to the Greenwich planning and zoning board of appeals, hereinafter called the board, from a decision of the building inspector denying an application to add to the club's land. The appeal stated that it sought to "[e]xtend land of permitted non-conforming use property." It stated: "Proposal is to extend existing Parking Lot and existing land area by constructing retaining walls of rock in what is now Long Island Sound and filling behind such retaining walls. In conjunction, it is proposed to dredge Rocky Point Harbor cleaning out rocks in the process. Also proposed to build a protecting breakwater to protect land from storms." In connection with the appeal, the club sought a special exception for the proposed extended land

area. As to this it stated: "Proposal is to extend land only to give (1) increased parking and thus reduce overflow parking on Rocky Point Rd., (2) protect club property from storms, and (3) provide about 1 acre additional land area to move club activities further away from abutting property owners. There will be no increase in club activities or club membership from historic level of 200."

The record does not disclose where, in respect to the high-water mark, the club proposed to construct the rock retaining walls in Long Island Sound. No point is made of this by the parties, however, and it is tacitly assumed by all parties, as indeed it should be, that the land reclaimed by filling behind the proposed retaining walls would enlarge and become a part of the club's land subject to the restrictions of the R-12 zone. *Poneleit* v. *Dudas,* 141 Conn. 413, 420, 106 A.2d 479.

The appeal by the club to the planning and zoning board of appeals was from the building inspector's denial of the club's application to make this addition to its existing nonconforming property. The building inspector, who is the officer empowered to enforce the building zone regulations (§ 24), took the position that the club sought to extend or add to a legally nonconforming use. A principal objective of the club's proposal, as recited above, was to extend its existing parking lot. Section 25 of the building zone regulations provides, in part, that "no parking area shall be constructed, resurfaced, extended or altered as to layout for use with an existing non-residential use except in accordance with a Site Plan approved by the Building Inspector with respect to access, circulation and safety of vehicular and pedestrian traffic and the effect on neighboring properties and residents." An appeal from the

decision of the building inspector to the board is provided for in § 28 (a) (2) of the regulations. Such an appeal and, of course, the appeal taken by the club, presented for the board's decision the question whether the building zone regulations applied to the situation and the manner in which they did apply. *Pascale* v. *Board of Zoning Appeals,* 150 Conn. 113, 116, 186 A.2d 377. An essential element in the board's consideration of the appeal would be the settled proposition that zoning regulations in general seek the elimination rather than the enlargement of nonconforming uses. *Baccante* v. *Zoning Board of Appeals,* 153 Conn. 44, 47, 212 A.2d 411.

The board held a hearing at which owners of residential properties in the area appeared in opposition to the club's proposal. Following the hearing, the board ignored the appeal and did not decide the issue presented by it. It devoted its attention to the application for a special exception and stated the issue before it to be "for authorization as a special exception to permit extension of non-conforming private club use to land created by construction of retaining walls and land fill at the end of Rocky Point Road, Old Greenwich, in the R-12 zone." The board decided that, subject to limitations set forth as conditions and safeguards, "the special exception for the extension of this non-profit club use must be allowed since the proof submitted by the parties shows that the standards set forth in the Regulations will be complied with." The conditions and safeguards imposed were (1) to reduce the requested size of the area to be filled, (2) to limit the club to its present 203 family memberships, (3) to prohibit the installation of any lighting facilities on the land to be added, (4) to restrict boat storage or "parking" in certain respects and (5) to restrict the

use of a loudspeaker to daytime sporting events and to prohibit trapshooting on the added area.

Two separate groups of plaintiffs took separate appeals to the Court of Common Pleas from the decision of the board. The court sustained both appeals, holding, in substance, that the basic requirements for a special exception had not been met, that the club, as now constituted, is nonconforming under the requirements for the R-12 zone in which it is located, that a nonconforming use of property should not be extended by a special exception and that the conditions imposed by the board of appeals were "not properly within the purvue [sic] of the special exception regulation." Both the board and the club moved to open and vacate the judgment on the ground that the court had misconstrued the application as one requesting an extension of a nonconforming use when, in fact, it sought a special exception for an additional tract which the club wished to utilize as an expressly permitted use. The court reiterated its conclusion that the club is nonconforming in the zone in which it is located but deleted that description of its status appearing in the original memorandum of decision. In all other respects the court reaffirmed the original decision sustaining the plaintiffs' appeal. The form of the judgment was modified to recite that the appeal was from the granting of "an application" by the club "for authorization for a special exception to permit the extension of its existing parking lot and to provide additional land for expanding the Club's activities" instead of an appeal from the granting of an application for a special exception "to extend the land of permitted non-conforming use property, increasing the total land area of the club approximately 25%" as stated in the original

judgment. The board and the club have appealed from the judgments rendered, as modified, in each case. The parties have stipulated that the two appeals may be combined in a single record before this court. Practice Book § 606.

The plaintiffs have not taken a cross appeal from the action of the trial court in modifying its original judgment as they might have done if they considered themselves aggrieved by that action. *Equitable Life Assurance Society* v. *Slade,* 122 Conn. 451, 464, 190 A. 616. No procedural difficulty is thus presented, however, because of the fact that, throughout the entire proceedings, everyone concerned with the case, both the parties and the trial court, have acknowledged and treated the use of the club property as a nonconforming one. The question which confronted the board, and, in turn, the trial court, was whether, under the zoning regulations, the club's nonconforming use of its existing property could be extended by the expedient of granting a special exception in order to make the added facility a permitted use under § 6 (3) (b) of the building zone regulations. It is because this was the principal issue to be decided that the supplementary conditions imposed by the board become important.

In order to grant a special exception, the board was required, pursuant to § 28 (b) (3) of the building zone regulations, to determine, among other things, that the proposed use (a) would not create a traffic hazard or congestion due to the type or number of vehicles required or hamper the town pattern of highway circulation, (b) would not create a physical hazard due to fire, explosion, or other similar cause, (c) would not create or aggravate a nuisance or result in the dissemination of odors, smoke, dust, gas, fumes, or other atmospheric pol-

lutant, noise, light, heat, glare, vibration or radiation, (d) would not discharge harmful waste material on or under land or into a sewer or drain and (e) would not be detrimental to the neighborhood or its residents or alter the neighborhood's essential characteristics. *Jeffery* v. *Planning & Zoning Board of Appeals,* 155 Conn. 451, 461, 232 A.2d 497; *Huhta* v. *Zoning Board of Appeals,* 151 Conn. 694, 697, 202 A.2d 139. Since the club has never applied for a special exception for its existing property, the board had never been required to determine, and had not determined, whether the activities which had been conducted over the years by the club on its 1.6 acres of land could qualify for a special exception when tested by these requirements. The only case presented to the board by the club was that the area which it sought to add to its existing property was to be used for an extension to the existing parking lot and that no use would be made of the additional land beyond the use which the club had made of its original property for a long time. The conclusion of the board was that the land proposed to be added would, in itself, meet the requirements of the regulations for a special exception. The board then imposed conditions and safeguards obviously designed to ensure only that the use now made of the existing land, when extended to the additional land, would not increase. There can be no doubt that the board was empowered to impose proper additional conditions and safeguards. *Jeffery* v. *Planning & Zoning Board of Appeals,* supra, 459. The court concluded, however, that the conditions and safeguards imposed were not within the purview of the special exception regulation and that the board exceeded its authority in granting the special exception.

The conditions and safeguards which the board was authorized to apply were required to be in accordance with the public interest and the comprehensive plan found in the regulations and in harmony with the general purpose of the regulations. Greenwich Bldg. Zone Regs. § 28 (b) (3) (1964); *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* 141 Conn. 632, 636, 109 A.2d 256. Nowhere in the regulations is there any indication that an extension of a nonconforming use is to be permitted. The general purposes of the regulations are such as are commonly found in zoning regulations. *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* supra, 637 n.4. It is the intent of building zone regulations generally that nonconforming uses should not be allowed to increase, and an extension of the space allotted to a nonconforming use is a proscribed extension of that nonconforming use and is inconsistent with the policy and comprehensive plan of the regulations. *Beerwort* v. *Zoning Board of Appeals,* 144 Conn. 731, 734, 137 A.2d 756.

The obvious purpose and effect of the conditions and safeguards imposed by the board in this case, taken in conjunction with the approval of the special exception which was sought, was to permit an extension of the nonconforming use which the club was already making of its existing property to the new land which was proposed to be added. The only effort was to confine the magnitude of that use to its present limits. Subject only to that restriction, the board allowed the nonconforming use to be expanded over the larger area.

The action of the board must be viewed in the light of the fact that it had never determined, and had never been asked to determine, whether the use

which the club has made, and is making, of its existing property could meet the requirements of the regulations for a special exception. There was evidence before the board that, over the years, the club has grown in size, that the noise from it has increased to the annoyance of residents in the area, that the sound of loudspeakers is heard late at night, that empty beer cans are thrown in neighbors' gardens, that drag racing has taken place late at night, and that garbage and debris have been discarded and tossed in neighbors' yards. Whether, in view of such facts, the narrow, dead-end, private road which provides the only access to the property, and other circumstances which might be disclosed, the club could qualify for a special exception under the regulations in view of its existing activities is, at least, not clear. Nevertheless the board's decision was, in substance, that the present nonconforming use could, under the limitations imposed, be extended to an additional area to be developed.

In so deciding, the board imposed conditions not authorized by § 28 (b) (3) of the building zone regulations and improperly concluded that the requirements for granting a special exception had been met.

There is no error in either case.

In this opinion the other judges concurred.