[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS
The defendant Town of Windsor Locks Planning and Zoning Commission and the intervening defendants Park Plaza, Inc. and Winchester Partnership made these motions to dismiss the appeals of the respective plaintiffs in these actions. The defendants claim that the plaintiffs, in the respective actions, lack standing to bring these appeals in that they are not "aggrieved." The motions are filed pursuant to General Statutes 8-8(J). Standing implicates the court's subject matter jurisdiction and hence must be determined prior to any further action on these appeals. Fuller v. Planing ZoningCT Page 10216Commission of Town of New Hartford, 21 Conn. App. 340 (1990).
When the question of subject matter jurisdiction is brought to the attention of the court, the matter must be passed upon before the court can proceed further. Castro v.Veera, 207 Conn. 420, 429 (1988). "When issues of fact are necessary to the determination of the court's jurisdiction due process requires that a trial-like hearing be held . . ."Standard Tallow Corporation v. Jowdy, 190 Conn. 48, 56 (1983). The court held such hearing on these motions, commencing April 4 through July 25, 1994, on various available dates.
Facts
The plaintiffs conduct the activity known as "Valet Parking" at several locations in the immediate vicinity of Bradley Airport in the Town of Windsor Locks. "Valet Parking" is described by the defendant's witness, Adrian Maught, Chief Executive Officer of the intervening defendant Park Plaza, Incorporated, as a parking activity whereby "the customer's automobile is checked in. Their luggage and their person are transported to the airport. Upon completion of their journey they are picked up at the airport and returned to Park Plaza to reclaim their vehicle."
This description aptly describes the business activity of each of the plaintiffs, and the business activity of the intervening defendant. The only difference between the activity of the intervening defendant, on the one hand, and that of the plaintiffs on the other hand, is that the intervening defendant conducts the activity indoors, whereas the plaintiffs conduct the same activity outdoors. The court further takes notice of the fact that valet parking is an adjunct to almost every major airport in the United States and probably to every major airport throughout the world.
The Zoning Ordinances of the Town of Windsor Locks do not permit "valet parking" in any zone, either as a permitted use or as special use permit. The use by the plaintiffs have existed for many years. Surprising as it may seem that such uses are not permitted, bearing in mind the natural adjunct of such activity, as an essential service to the airport, and their long established use, the failure to allow the uses as specifically permitted uses or as special permit uses has the legal and obviously intended effect of restricting the CT Page 10217 expansion or enlarging of this activity in the vicinity of the airport.
It is elementary that the plaintiffs, operators of the outdoor valet parking facility, which long antedated the present zoning ordinance, are not legally enabled to enlarge or expand their existing uses. It is clear that they cannot demonstrate "exceptional difficulty or unusual hardship" as required for such expansion or enlargement, this being the criterion for the granting of a variance per General Statutes8-6. See Pike v. Zoning Board of Appeals, 31 Conn. App. 270
(1993); Haines v. Zoning Board of Appeals, 26 Conn. App. 187
(1991); Raffaele v. Planning Zoning Board of Appeals,157 Conn. 454, 462 (1969). See, also, Chapter VIII, Zoning Regulation, Town of Windsor Locks.
The absence of valet parking as a specifically permitted use or as a special permit use, has been referred to by the parties as a moratorium on valet parking, which is a proper vernacular description of the effect of the zoning ordinance. Nowhere in the record or in the evidence does it appear that it is the intent of the ordinance to "reduce nonconforming uses to conforming uses with all the speed justice will tolerate." See, Helbig v. Zoning Commission, 185 Conn. 294,306 (1981). It would be naive to assume that the Town of Windsor Locks, by not allowing valet parking as a permitted use or a special permit use, intended to eventually eliminate valet parking for the vicinity of the airport. Hence the court accepts as reality the fact that the non-permitting of valet parking, by the zoning ordinance, intended to accomplish, by a simplistic means, a moratorium on the expansion of the activity valet parking in the vicinity of the airport.
The intervening defendant Park Plaza, Inc. and Winchester Partnership owned a building within the zone in question. The building had been vacant for a period of time, it having been vacated by a manufacturing company. The defendants proposed to the Planning Zoning Commission that it promulgate a new regulation captioned "Adoptive Reuse Regulation," adopted as Regulation Section 407 and 408. In summary, it provides that the Zoning Commission may permit, by Special Permit "any use which it determines is consistent with the criteria set forth above . . . even if such use is not otherwise permitted in Chapter IV of these Regulations . . ." (Emphasis in CT Page 10218 original).
The use, valet parking, is not permitted in any of the zones, including the zones in which the lands of the plaintiffs and the intervening defendant are located. The intervening defendant, pursuant to the "any use" provision of the new ordinance which it proposed, then obtained a special permit to valet park 800 vehicles within the building. The plaintiffs did not appeal the enactment of the ordinance or the original special permit to allow the defendant to valet park 800 vehicles.
On June 4, 1993 the intervening defendant applied to the Planning Zoning Commission for permission to expand its special use permit for its indoor valet parking by an additional 348 parking spaces. The defendant Planning Zoning Commission granted the application on June 14, 1993. The plaintiffs have appealed that decision. The plaintiffs contend that the action of the Commission was illegal and arbitrary and in abuse of its discretion in that, to summarize, the applicant did not then have a vacant area in excess of 150,000 square feet; there was not a vacancy rate of over 50%; failure to show that the expansion would be a substantial benefit to the Town of Windsor Locks; failure to show inability to use the space for zone-permitted uses; failure to post a sign. Additionally the plaintiffs claim that the approval threatened the integrity of the purpose and intent of the moratorium, which the plaintiffs relied upon in making their business decisions and that their property interests, their business and real estate, are adversely affected by the decision of the Commission.
The defendants make this motion to dismiss "because the plaintiffs have not shown themselves to be aggrieved persons" within the meaning of the statute and as required by General Statutes Section 8-8(d).
Discussion
The plaintiffs do not claim to be statutorily aggrieved parties. Their properties are not "within a radius of 100 feet of any portion of the land involved in the decision of the board," General Statutes 8-8(a)(1) and hence do not qualify for automatic aggrievement. CT Page 10219
The plaintiff Northeast Parking, Inc. d/b/a VIP Valet Airport Parking and Bradley Air Parking Ltd. Partnership d/b/a Bradley Air Parking owns long term lease and purchased the land upon which it operates the valet parking business known as "Bradley Air Parking." It also operates, on a long term land lease the valet parking business known as "VIP Valet Airport Parking." Together these entities have approximately seventeen hundred parking spaces on that part of the land currently used for parking. The plaintiff's predecessor at VIP Valet Airport Parking attempted to expand the use to an abutting parcel in 1986 or 1987 and was precluded from expanding by official admonition of the Town of Windsor Locks. This plaintiff understands, and properly so, that it cannot expand its valet parking operation, regardless of the fact that it has additional land upon which additional parking spaces can be placed.
The plaintiff Bradley Airport Valet Parking, Inc., d/b/a Piccolo's Bradley Valet Parking operates valet parking on land owned by the cousin of Mr. Piccolo, Ms. Grace Alampi, and has been operating the business on a month to month verbal lease with that family member since 1976. The business has additional land. In 1987 it attempted to expand to the south to use some of the additional land as an "overflow lot." The expansion lasted two to three weeks and was discontinued "because the building official threatened to have me arrested." Testimony, Mr. Piccolo. It is certain that the zoning administrators are adamant concerning the prohibition against expansion of valet parking.
The defendants claim, in the brief filed in connection with the motion to dismiss, that the holder of a lease cannot be an aggrieved party, citing Pergument v. Norwalk Corp. v.Haimowitz, 4 Conn. App. 633 (1985). The case is not in point. It deals with the question of whether a lessee is an "owner of land" for the purpose of being entitled to special notice under the ordinance, similar to the requisites of "ownership" for statutory aggrievement under General Statute 8-8. The plaintiffs are not claiming statutory aggrievement, nor are they claiming entitlement to ordinance-mandated special notice.
The law does not define the scope of any particular specific legal interest in land which is minimally necessary to have a sufficient interest in the property to warrant CT Page 10220 consideration as to whether the person or entity to claim aggrievement. The question of the scope of legal interest is a question of fact. ". . . whether the applicant was in fact a real party in interest with respect to the subject property. Whether the applicant is in control of the property, whether he is in possession or has a present or future right to possession . . ." Richards v. Planning Zoning Commission,170 Conn. 318, 323 (1976). Also, see Goldfeld v. Planning Zoning Commission, 3 Conn. App. 172, 177, 178 (1985).
The court determines that the interests of each of the plaintiffs, by virtue of their long term and continuous occupation and use of the respective lands upon which they conduct their business, under ownership or written and/or oral leases, as aforesaid, are sufficient and adequate to withstand attack on the basis of an insufficient interest in their land.
The defendants further contend that the plaintiffs may lack standing because of their disfavored legal statute as "non-conforming uses." This is a novel argument, which is neither supported by law or constitutional reality. Non-conforming uses are "legally existing nonconformities."Petruzzi v. Zoning Board of Appeals, 176 Conn. 479, 483
(1979). "It is a vested right which adheres to the land itself." (p. 483). (emphasis added). Such right cannot be extinguished or diminished by preclusion of access to the channels of law as provided by statute, to seek redress from illegal or arbitrary administrative actions.
The court, having determined that the plaintiffs have a sufficient legal interest in their properties, in which they operate valet parking, moves to the question of whether they are classically aggrieved by the action of the Commission.
The defendants contend that because, under the ordinance, they, the defendants, are permitted users, by Special Permit, and that the plaintiffs are non-conforming users, this confers upon the defendant Park Plaza, Inc. and Winchester Partnership a special sanctioned legal status, thus entitling them to a favored legal status so as to legally distinguish the questioned prerogative i.e., expansion of valet parking, from that same prerogative which is precluded by law as to the plaintiffs because of the plaintiffs' lesser status as non-conforming users. CT Page 10221
This argument belies the question rather than to address the issue. The argument of the defendant is, in essence, that if the Town, through its Zoning Commission, grants to one person the special privilege of expanding its activity while simultaneously denying that privilege to all other operators within the same zone, such action is immune from scrutiny and challenge by affected persons because the law, as promulgated by the town making all others non-conforming users, prohibits he challenger from access to judicial review. The argument is circuitous and self insulating, and would allow a town to grant such special privilege while simultaneously immunizing the town action from scrutiny by denying specially affected persons the right to standing. Such self-immunizing would in and of itself be violative of both Due Process and Equal Protection under both the State and the Federal Constitutions. The status of non-conforming use entitles the plaintiffs to full constitutional protection. Petruzzi v. Zoning Board ofAppeals, supra.
The plaintiffs, though not in such precise terms, attack the concept of the classification which enables the defendant, through special legislation, to avoid the "moratorium" as concern the expansion of valet parking.
 ". . . a state may make classifications when enacting or carrying out legislation but in order to satisfy the equal protection clause the classifications made must be based on some reasonable ground. To determine whether a particular classification violates the guarantees of equal protection, the court must consider `the character of the classification; the individual interests affected by the classification; and the governmental interests asserted in support of the classification.' Where the classification impinges upon a fundamental right or impacts upon an inherently suspect' group it will be subjected to strict scrutiny and will be set aside unless it is justified by a compelling state interest."
 Franklin v. Berger, 211 Conn. 591, 595 (1989).
The plaintiffs cannot be denied standing on the basis that they are non-conforming users and that the defendants are CT Page 10222 artificially elevated by being classified, through special legislation, as zoning authorized special permit users.
To entitle an activity to special treatment the activity must be significantly different in fact from the activity of others not so specially treated. It is for the trial court to determine, at trial, whether the activity of the defendant is significantly different so as to justify disparate treatment in order to allow the defendant to be extricated from the restrictions of the moratorium as to the non-expansion of valet parking.
The defendants further contend that the plaintiffs lack standing because their aggrievement is based upon merely a concern that the action complained of would permit the operation of a business in competition with their business, hence citing Whitney Theater Company Inc. v. Zoning Board ofHamden, 150 Conn. 285.
The defendant properly points out that the plaintiff did not contest the adoption of the ordinance which allowed the conversion of the building to indoor parking use in the first instance. Under the cases cited by the defendant the plaintiffs may have been ill advised to contest the ordinance which allows the establishment of indoor valet parking. Such contest would seek preclusion of establishment of competition in the first instance, and therefore arguably violative of that large body of law enacted for the public purpose of enhancement of competition.
The plaintiffs position in this appeal is that the granting to the defendant the special privilege of expanding
its business, while denying to all others that competitive opportunity, is in essence governmentally sanctioned and encouraged anti-competitive administrative activity, ostensibly sanctioned by legislation which, as applied by the Commission, has the natural effect of hindering competition. The plaintiff articulates the proposition in the verbiage of the appeal, claiming that "the Commission has threatened the integrity of the purpose and intent of the moratorium."
Although it is true that no one has the right to demand the continuance of governmental activity which allows that person a special or exclusive right to conduct a particular business activity within a particular zone, nor does any CT Page 10223 person have the right to the preservation of a special increment of property value based upon an exclusive or semi-exclusive non-conforming use right to operate a business in a particular zone, yet it is equally true that zoning ordinances cannot operate in the converse fashion so as to provide special privileges to selected business competitors without material reason therefore.
As in the case of Mills v. Town Planning ZoningCommission, 145 Conn. 237 (1958), each of the plaintiffs sought to expand their valet parking activity, through the efforts of the present owner in the case, Park Plaza, Inc., and a predecessor owner in the other case. Both plaintiffs were denied such permission. See Mills v. Town Planning andZoning Commission, supra, P. 240. The distinction between the instant case and that of Motts Realty Corporation v. TownPlanning Zoning Commission, 152 Conn. 535 (1965) is readily apparent. In that case the zoning designation was changed to a zone wherein the activity was now specifically permitted by the ordinance, the effect of which was to promote fair competition without favoritism. In the instant case the expansion is allowed within a zone for a particular party, wherein the general activity, valet parking, is restricted from expansion for all others through the application of the constricting principles applicable to non-conforming uses.
Each of the plaintiffs have land upon which to expand if not prohibited by the "moratorium" effect of the use, valet parking, being non-permitted in the zone — or throughout the town. The plaintiffs have demonstrated that they compete for the same customers and that the mandate against expansion places they and all other valet parking operators at a competitive disadvantage in relation to the intervening defendant. The claim raised is the stifling of competition by specific governmental action.
It is self evident that the plaintiffs have demonstrated standing to appeal. "There must be a colorable claim that the party has suffered or is likely to suffer a direct injury, in and individual or representative capacity . . . . a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy." Mobil Oil Corp. v. Zoning Board of Appeals,35 Conn. App. 204, 208 (1994). CT Page 10224
Aggrievement is established if "there is a possibility as distinguished from a certainty that some legally protected interest . . . has ben adversely affected". Hall v. PlanningCommission, 181 Conn. 442, 445 (1980).
In the face of a claim of anti-competitive governmental activity it is difficult to envision a party other than the competitors who would be adversely affected by such activity. As in most claims of governmental discrimination it is difficult to perceive who, other than the competition, would be inclined to challenge such activity. Non-affected parties would most likely lack standing to mount such a challenge, even if so motivated by a general sense of civic responsibility.
It must be borne in mind that the question before this court is the matter of standing, and not the merits of the appeal. It remains for the plaintiffs to prove that the Planning and Zoning Commission acted illegally and arbitrarily by virtue of the specific claimed shortcomings of the factual matters required to be demonstrated by the applicants; furthermore it remains for the plaintiff to prove that the granting of the application to expand violates their right to have the restrictions of the moratorium applied in equal fashion to all valet parking operators. These matters of substance are the subject of the trial, and cannot be determined by this motion to dismiss.
The defendant further claims that, as the plaintiffs failed to appeal the enactment of the "adaptive re-use regulation" in the first instance they have waived their right to appeal the activity of the Commission in granting expansion of indoor parking by the Commission. The re-use ordinance is expansive and does not apply only to valet parking. The plaintiffs are not here contesting the adoption of the ordinance as such. They are appealing the activity of the Commission in allowing an enlargement of the valet parking activity. Expansion is the subject of this appeal, not the adoption of the ordinance. Laches cannot be applied to something which has not occurred. This line of reasoning lacks a rational basis, and is rejected by the Court.
The defendants further contend that the plaintiffs have not "exhausted their administrative remedies's as they have not themselves applied to a zoning board of appeals for a variance CT Page 10225 to expand their own valet parking activity. The argument is superficial. The plaintiffs have no right to a variance. In the absence of a showing of hardship, as that term is defined by law, a zoning board of appeals is without right to vary the regulations, here the "moratorium" for any of these operators. The law does not require any person to engage in a useless and futile act as a condition to the exercise of the right to access to the appellate process.
The effect of the "moratorium" on valet parking is in effect no different than the granting to existing operators of a franchise of sorts to continue to operate valet parking. The plaintiffs have not objected to the fact of introduction of potential competition through the enactment of this special legislation, (see Motts Realty Corporation v. Town PlanningZoning Commission of Windsor, 152 Conn. 535, 537 (1965) or the original allowance of 800 parking spaces to enhance competition. The plaintiffs, as the specifically affected parties, have every right to challenge the thereafter granting of a special prerogative to certain individuals, expansion, which is denied to all others. The fact that a granting of such privilege may have an adverse financial effect upon the plaintiffs, engaged in the same business activity, does not eliminate the status of aggrievement, merely because the potential loss perceived by the plaintiffs may be largely financial.
The case most closely related to the instant circumstances, bearing in mind the governmentally imposed moratorium, is Light Rigging Co. v. Department of PublicUtility Control, 219, Conn. 168 (1991).
 "If we conclude, as the trial court did, that the plaintiff's allegations of business competition and diminution of value of their certificates are insufficient to show aggrievement, the plaintiffs are foreclosed from judicial review of the agency's findings as to the need for another certificate holder. We find this position untenable since the possibility exists that the alleged loss of business and diminution in value of the plaintiff's certificate would result from competition for which no need exists." (P 176).
Claims of unfair business competition always implicate CT Page 10226 financial considerations. The business of business is finance. It is particularly appropriate that courts carefully scrutinize claims of governmental favoritism within a governmentally restricted business activity. The plaintiffs have demonstrated aggrievement and hence standing to prosecute these appeals.
The court does not pass on the viability of the substance of the plaintiff's reasons for appeal, in its decision on this motion. The court does decide that the plaintiffs have demonstrated aggrievement, standing, to prosecute these appeals. The motions to dismiss are accordingly denied.
L. Paul Sullivan, J.