[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, William Cigal, has filed an administrative or record appeal of a decision by the defendant Zoning Board of Appeals of the city of Stamford (ZBA). The ZBA granted a variance CT Page 14216 to Tony-Vinny Realty, Inc., hereinafter referred to as the defendant, permitting it to establish surface parking on the northerly portion of its property located at 1297 Long Ridge Road in Stamford.
The portion of defendant's property on which added parking was sought consists of approximately a half an acre and is currently located in the RA-1 zone, which only permits single family residential use and not commercial use.[1] On the southerly portion of the property, also consisting of about a half acre, a restaurant is located which is owned by the defendant and known as Giovanni's Steakhouse. A restaurant has existed at the same site for many decades. The defendant purchased the restaurant portion of its property, which is also currently located in the RA-1 zone, in 1977, and the northerly portion, the site of the proposed parking, in 1979. The portion of the lot where the restaurant is located and the area to the north that is the subject of this appeal previously existed as separate lots, but were combined in April, 1994, because of common ownership, and now constitute one lot. Since the use of the site for a restaurant predates the enactment of the zoning ordinance, such use is a protected or legally nonconforming use in the RA-1 zone.
The defendant applied to the ZBA for a variance of Article IV, section 10, of the Stamford Zoning Regulations, which pertains to nonconforming uses, in order to construct a parking lot with a capacity of approximately 35 cars for the use of patrons and employees of the restaurant.[2] The application did not involve the enlargement of the seating capacity, or size of the restaurant, or an increase in the number of curb cuts on Long Ridge Road. The application was referred to, among other agencies, the Stamford Planning Board[3] which issued a report noting that the defendant was seeking "a use variance in a RA-1 Residential District to allow 33 additional parking spaces for a commercial use."[4] The Planning Board recommended approval of the defendant's application on the basis that it would substantially improve the parking situation along Long Ridge Road in terms of parking layout and improved safety.
At the public hearing held by the ZBA on July 13, 1994, the defendant stated that it needed additional parking because its patrons were parking along the edge of Long Ridge Road, creating a hazardous situation. Under current parking requirements, a restaurant of this size would require 56 parking spaces, and presently about 30 are provided on site. The defendant said that CT Page 14217 if its application was granted, it would be able to provide on-site parking sufficient for a restaurant with a seating capacity of 167 persons. The defendant presented the ZBA with a petition described as containing the signatures of about 430 property owners favoring the application.
On the other hand, a number of persons spoke at the hearing and voiced their opposition to the defendant's proposal on the basis that it represented an encroachment of a commercial use into a residentially zoned neighborhood. A representative of the North Stamford Association questioned whether there was in fact an "overflow" of vehicles for the restaurant, and presented some possible options for off-site parking.
In a four to one decision of September 15, 1994, the ZBA approved the defendant's application for a variance of section 10(A) regarding nonconforming uses to permit parking on the northerly portion of its property. The ZBA's decision stated: "[t]o deny this variance would deny the applicant reasonable use of the property." The ZBA added that its approval was conditioned upon the defendant using the northerly portion of the premises exclusively for parking in connection with the restaurant, and that there would be no parking on state property along Long Ridge Road. Thereafter, the defendant obtained a building permit to construct a parking lot for 35 cars on the northerly portion of its property, and proceeded to construct and complete the new parking lot in late 1994, despite the pendency of this appeal.
The plaintiff owns property with a residential dwelling thereon at 1286 Long Ridge Road, which is directly across the street from the subject premises. At a hearing held for the purpose of establishing aggrievement, the plaintiff was found to be statutorily aggrieved pursuant to General Statutes § 8-8(a)(2)(b), and hence to have standing to pursue this appeal. This statute provides in relevant part that "any person aggrieved by a decision of a board may take an appeal . . . ." The plaintiff fits the definition of an "aggrieved person" in § 8-8(a)(1) since he owns "land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."
The plaintiff's complaint alleges in summary that: (1) the ZBA did not have authority to grant the variance because the defendant failed to display the exceptional difficulty or unusual hardship which are prerequisites to the granting of a variance by a municipal zoning board of appeals; (2) General Statutes § 8-6 and CT Page 14218 section 19-1.4(2) of the Stamford Zoning Regulations prohibit the ZBA from granting a variance to permit a use in a residential district which is not allowed in that district;[5] and (3) the ZBA decision violates Article IV, section 10(A) of the Stamford Zoning Regulations which defines a nonconforming use as "[any] . . . use of land or building legally existing at the time of enactment of this Regulation . . . shall be designated a non-conforming use. Such use may be continued but may not be extended or expanded, or changed to a less restrictive use . . . ."
As pointed out in Sheridan v. Planning Board, 159 Conn. 1, 4,266 A.2d 396, (1969), the primary basis upon which zoning authority is founded for Stamford is a special act as embodied within the Charter of the City of Stamford, rather than the state enabling legislation contained in Chapter 124 of the General Statutes. The Stamford charter was enacted pursuant to a Special Act of the General Assembly in 1953, 26 Spec. Laws 1228, No. 619. Id. Variances of the zoning regulations are authorized by Section 560 of the Stamford Charter, which provides that the ZBA shall have the same authority found in General Statutes § 8-6, viz., a variance is permitted if a literal enforcement of the zoning law would cause "exceptional difficulty or unusual hardship" because of some specific condition affecting a parcel of land.[6] The Zoning Regulations of Stamford also require a finding of "unusual hardship" and "special circumstances" in order to justify the granting of a variance. See Article V, section 19, 2.1 and 2.2.[7]
Thus, the city charter and the state statute both mandate a finding that the property in question is in some way sufficiently unique as to warrant an exception to the literal enforcement of the zoning ordinance. The case law on the subject of variances confirms that "[a] local zoning board can only grant a variance if adherence to the strict letter of the zoning ordinance [is] shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Emphasis deleted; internal quotation marks omitted.) Wnuk v. Zoning Board of Appeals,225 Conn. 691, 697, 626 A.2d 698 (1993). "Proof of hardship is . . . a condition precedent to granting of a variance, and such hardship must arise from the circumstances or conditions beyond the applicant's control." Eagan v. Zoning Board of Appeals,20 Conn. App. 561, 563, 568 A.2d 811 (1990). If, on the other hand, "the claimed hardship arises from the applicant's voluntary act, a zoning board lacks power to grant a variance." Abel v. ZoningBoard of Appeals, 172 Conn. 286, 289, 374 A.2d 227 (1977). "Personal hardships, regardless of how compelling or how far beyond CT Page 14219 the control of the individual applicant, do not provide sufficient grounds for the granting of the variance." Garibaldi v. ZoningBoard of Appeals, 163 Conn. 235, 239-40, 303 A.2d 743 (1972).
"In reviewing the actions of a zoning board of appeals we note that such a board is endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal." (Internal quotation marks omitted.) Francini v. Zoning Board of Appeals,228 Conn. 785, 791, 639 A.2d 519 (1994). "When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. . . . Courts must not substitute their judgment for that of the zoning board and must not disturb decisions of local boards as long as honest judgment has been reasonably and fairly exercised after a full hearing. (Citation omitted; internal quotation marks omitted.) Fernandes v. ZoningBoard of Appeals, 24 Conn. App. 49, 53, 585 A.2d 703 (1991). It is also axiomatic that a plaintiff has the burden of proving that a zoning board of appeals has acted illegally, arbitrarily or in abuse of its discretion. Id., 55. Moreover, if any one of the reasons advanced by an agency is sufficient to support its granting of a variance, then its decision must be upheld. Sakson Nursery,Inc. v. Planning and Zoning Board of Appeals, 30 Conn. App. 627,629-30, 621 A.2d 768, cert. denied, 226 Conn. 908, 625 A.2d 1379
(1993). The court's only role is to search the record to determine whether the ZBA's conclusion was reasonably supported by the record but not attempt to weigh the evidence or determine issues of fact. Farrington v. Zoning Board of Appeals, 177 Conn. 186,190, 413 A.2d 817 (1979).
Even when employing this restricted standard of review, the court finds no support in the record justifying the granting of this variance by the ZBA, and therefore must conclude that the decision of the ZBA was, under the circumstances, illegal, arbitrary and an abuse of its discretion. In this case, the ZBA gave as its only reason for granting the variance that the applicant would otherwise be denied the "reasonable use of the property." There is no reference to "unusual hardship" in the decision as required by Section 19, 2.1 of the Stamford Regulations. The rational for the application was stated clearly by the defendant's counsel at the public hearing. "I'm asking you to grant the variance to clean up the area, to make it safer and better for everybody involved up there." The chairman of the ZBA replied: "The point I'm making is the business is right now too CT Page 14220 big for the property that it is on and we are asked then to grant a variance to give you more property so you can run the business. It's as simple as that."
Any hardship the defendant now has in terms of parking arises out of the operation of its restaurant. "Where the claimed hardship arises from the applicant's voluntary act . . . a zoning board lacks the power to grant a variance. . . . The hardship which justifies a board of zoning appeals in granting a variance must be one that originates in the zoning ordinance . . . and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved. . . . [S]elf-inflicted or self-created hardship . . . is never considered proper grounds for a variance. . . . [W]here the applicant or his predecessor creates a nonconformity, the board lacks power to grant a variance." (Citations omitted; emphasis deleted; internal quotation marks omitted.) Pollard v. Zoning Board of Appeals,186 Conn. 32, 39-40, 438 A.2d 1186 (1982).
The defendant and the ZBA contend that by permitting parking in the northern portion of the defendant's property, the defendant will eliminate parking and traffic problems on Long Ridge Road. No authority has been presented by the defendant that justifies the granting of a variance simply because an applicant is able to cure some existing bothersome problem. The defendants other claim is that a denial of the application to add the 35 requested parking spaces would result in the confiscation of the property where the parking is proposed. However, the defendant voluntarily combined the northerly lot with the restaurant site into a single lot, and that lot is currently being used for a restaurant, so it is difficult to understand where confiscation has occurred.
As an additional reason for appealing the granting of the defendant's application for a variance, the plaintiff also claims that the action of the ZBA constitutes an attempt by that agency to unlawfully vary the use regulations for the RA-1 zone, which is prohibited by section 19-1.4(2) of the Regulations, as previously quoted in footnote 5. This contention appears sound in that parking for a commercial establishment is not a permitted use in this residential zone. The application was described by the defendant as a request to vary the section of the regulations regarding nonconforming uses, but the Planning Board's characterization of the application as seeking a variance of the use regulations is more accurate. Thus, the ZBA was without authority to grant the defendant's application both because it represents a variance of CT Page 14221 the use regulations, and it was not presented with sufficient evidence of "unusual hardship" to justify the granting of a variance of the regulations regarding nonconforming uses.
In addition to its argument regarding the granting of a variance, the plaintiff also contends that the proposal to put a parking lot on the northerly portions of the defendant's property, which would approximately double the number of parking spaces, represents an illegal expansion of an existing nonconforming commercial use into a residential zone. A discussion of expanding nonconforming uses begins with the axiom that [i]t is a general principle in zoning that nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit. In no case should they be allowed to increase. . . . While a mere increase in the amount of business done pursuant to a nonconforming use is not an illegal expansion of the original use, a change in the character of a use . . . does constitute an unlawful extension . . . ." (Citations omitted; internal quotation marks omitted.) Bauer v. Waste management ofConnecticut, 234 Conn. 221, 243, 662 A.2d 1179 (1995). "[W]e have recognized that certain changes in nonconforming uses represent permissible intensifications within the scope of the valid nonconforming use." Id. "In deciding whether the current activity is within the scope of a nonconforming use consideration should be given to three factors: (1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property." (Internal quotation marks omitted.) Id., 236-37.
In Connecticut Resources Recovery Authority v. Planning Zoning Commission, 225 Conn. 731, 745, 626 A.2d 705 (1993), the court discussed the "natural expansion doctrine." This doctrine permits the expansion of a valid nonconforming use if there is "an objective manifestation of intent to appropriate the remainder of the parcel for the use at the time of nonconformity . . . or . . . where intent to appropriate the entire parcel was not at issue." Id. In that case, the court held that the zoning authority could reasonably have concluded that "the plaintiffs had failed to demonstrate an intent to appropriate the entire tract for solid waste . . . and that the natural expansion doctrine was therefore inapplicable." Id., 747. As previously noted, the defendant applied for a variance to use the northerly portion of the subject premises for parking in 1979, and was rejected. There is nothing CT Page 14222 in the record that indicates that the defendant manifested the requisite intent to use the entire tract for a commercial use.
The facts at issue in Raffaele v. Planning Zoning Board ofAppeals. 157 Conn. 454, 254 A.2d 868 (1969), are almost directly on point. A private club, which had existed for many years in a residential zone as a nonconforming use, desired to add to its property by constructing retaining walls in order to extend and increase the existing parking for the club, and also to "reduce overflow parking on Rocky Point Road." Id., 456-57. The club stated that it would not use the new land "beyond the use which the club had made of its original property for a long time." Id., 461. These are very similar arguments made by the defendant in this case. The Supreme Court held that "an extension of the space allotted to a nonconforming use is a proscribed extension of that nonconforming use . . ." Id., 462. Thus, the court found that the board in permitting expanded parking for a legally nonconforming use in a residential zone had unlawfully decided that "the present nonconforming use could, under the limitations imposed, be extended to an additional area to be developed." Id., 463. It should also be noted that while the club in Raffaele was a legally nonconforming use because it predated the zoning regulations, the operation of the club in its zone was a permitted use as a special exception, whereas, in the present case, the operation of a restaurant is not a permitted use in the RA-1 zone. Therefore, the argument is stronger in the present situation that such an addition of parking is a proscribed extension of a nonconforming use.
In conclusion, the variance should not have been granted both because it represents a variance of the use regulations and because the defendant failed to demonstrate "unusual hardship," and because the existing nonconforming use was "extended or expanded." Accordingly, the appeal of the plaintiff is sustained, and the decision of the defendant Stamford Zoning Board of Appeals granting permission to the defendant to increase its parking area to the north of the existing restaurant is reversed.
So Ordered.
Dated at Stamford, Connecticut, this 15th day of December, 1995.
William B. Lewis, Judge