[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 330
The plaintiff, Philip C. Armetta, appeals a decision of the defendant, the Middletown Zoning Board of Appeals ("Board"), denying his application to make certain modifications to his solid waste transfer station. The parties have filed briefs, and argument was heard by the court on November 27, 1995.
I. FACTS
The plaintiff is the owner of a parcel of property known as 90 Industrial Park Road, Middletown, Connecticut. Record: A-3; Complaint, ¶ 1. In 1987, the plaintiff constructed a mini solid waste transfer station ("facility") upon said property with the approval of the City of Middletown ("City") and the Connecticut Department of Environmental Protection ("DEP"). Record: T-1, at 1-2, 16; A-4. At that time, under applicable City zoning, the facility, which is located in an Interstate Trade ("IT") zone, was a permitted use at the property. Record: T-1, at 2.
In September, 1994, the DEP issued a Minor Permit Amendment to the plaintiff, authorizing the plaintiff to make certain structural modifications to the facility Record: A-5; T-1, at 8. The plaintiff's proposed modifications call for the replacement of an existing waste compactor with a more modern tipping floor. Record: T-1, at 8. Additionally, the new piece of equipment will require alterations to the plaintiff's existing truck ramps. Record: A-5. Finally, although the existing compactor was and is operated outdoors under a shed roof, the new tipping floor must be protected from the weather. Record: T-1, at 8. Consequently, the plaintiff's proposed modifications to the facility also include a 87' x 60' structure to cover the new equipment and modified ramps. Record: A-11.
On October 15, 1994, however, the Middletown Zoning Code was amended to prohibit the siting of new solid waste transfer stations in the I-T zone. Record: T-1, at 2. Accordingly, the facility became, and remains, a legal nonconforming use under the regulations. Record: T-1, at 2; S-1. Thereafter, on December 14, 1994, the plaintiff submitted an application to the City seeking permission to construct an "[a]ddition to industrial building for transfer station." Record: A-13. Specifically, the plaintiff sought to construct an 87' x 60' structure, adjacent to an existing building at the property, to house the plaintiff's proposed new equipment and modified ramps. Record: A-1, A-11, A-12, A-13. By CT Page 331 letter dated December 28, 1994, however, the Middletown Director of Planning and the Middletown Zoning Enforcement Officer issued a joint decision denying the plaintiff's application on the following grounds:
1. On December 14, 1994 the date this application was submitted to this office, transfer stations were not permitted in the Interstate Trade (IT) zone.
2. The existing "mini transfer station" with a 50 yard compactor is now classified as a nonconforming use.
Section 14.01 of the Middletown Zoning Code states:
General Concept
 A. Nonconforming Uses may continue to exist without any change, except as herein provided.
Section 14.06 of the Middletown Zoning Code states:
Additions, Expansion Moving
 No additional structure or enlargement or increase of land area or relocation in whole or in part of any nonconforming use shall be permitted.
 While we acknowledge that nonconforming uses are allowed to continue and can even be intensified, it is our opinion that the proposed addition constitutes an unpermitted change and enlargement or expansion of a nonconforming use. This 34% increase in building area will change the nature and character of the use. We believe an extension of the space allotted to a nonconforming use is a proscribed extension of the nonconforming use.
3. In a previous letter (see attached) your legal counsel stated that it was your intention to convert from a "compactor transfer station" to an "open top transfer station." Your current approval is for a "mini transfer station" with a 50 yard compactor. Your proposal to change to an open top transfer station will clearly change the character and nature of the original use, CT Page 332 including a change in the method of processing, a change in the type of trucks coming to and from the site and an expansion of the required amount of space for the new type of use.
4. Finally, it is our understanding that the general policy with regard to nonconforming uses is as follows:
 "It is a general principal in zoning that nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit. In no case should they be allowed to increase."
 We feel it would be completely contrary to this policy to allow an addition to this existing nonconforming use.
Record: S-1.
On January 10, 1995, the plaintiff filed an appeal of this decision with the Board. Record: A-1; Complaint, ¶ 5. Following a public hearing held before the Board on February 9, 1995, the plaintiff's appeal was denied, based on the four reasons set forth by the Planning Director and Zoning Enforcement Officer in their joint decision. Record: T-1, at 38; Complaint, ¶ 5. Official notice of the Board's denial was published on February 16, 1995. Record: S-5; Complaint, ¶ 5.
Thereafter, on March 3, 1995, the plaintiff filed an appeal from the Board's decision with the Superior Court. Therein, the plaintiff alleges that the action of the Board in denying the plaintiff's appeal was arbitrary, illegal, and an abuse of the Board's discretion, because:
 a. The proposed modifications to the existing facility located on the plaintiff's property are legal changes to an existing, non-conforming use that the City of Middletown is without authority to prohibit;
and
 b. The reasons given for the approval are not supported by the record, are factually incorrect or based on incorrect information, and are insufficient as a matter of law.
CT Page 333
Complaint, ¶ 6.
II. AGGRIEVEMENT
Aggrievement, which is a jurisdictional question involving standing; DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369,373, 588 A.2d 244 (1991), is a prerequisite to maintaining an appeal. Winchester Woods Associates v. Planning ZoningCommission, 219 Conn. 303, 307, 592 A.2d 953 (1991). An owner of the property which forms the subject matter of the application to the agency and appeal to the court is always aggrieved. WinchesterWoods Associates v. Planning Zoning Commission, supra, 219 Conn. 308;Bossert Corp. v. Norwalk. 157 Conn. 279, 285, 253 A.2d 39
(1968).
In the present case, the record reveals that the plaintiff is the owner of the property in question. Record: A-3; Complaint, ¶ 1. Thus, the court finds that the plaintiff is aggrieved pursuant to General Statutes § 8-8 (a)(1), and has standing to bring the within appeal.
III. SCOPE OF REVIEW
A nonconformity is defined as a "use or structure prohibited by the zoning regulations but . . . permitted because of its existence at the time that the regulations are adopted." Adolphsonv. Zoning Board of Appeals, 205 Conn. 703, 710, 535 A.2d 799
(1988). The rule concerning the continuance of a nonconforming use protects the "right" of a user to continue the same use of his or her property as existed prior to the adoption of the subject zoning regulations. Helbig v. Zoning Commission, 185 Conn. 294, 306,440 A.2d 940 (1981); Karls v. Alexandra Realty Corp., 179 Conn. 390,398, 426 A.2d 784 (1980).
Nonconforming uses are protected by statute. Pursuant to General Statutes § 8-2, zoning regulations "shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations." It is well settled, however, that nonconforming uses should not be allowed to increase; rather they should be abolished or reduced to conformity as soon as possible. Connecticut Resources RecoveryAuthority v. Planning Zoning Commission, 225 Conn. 731, 740,626 A.2d 705 (1993); Adolphson v. Zoning Board of Appeals, supra,205 Conn. 710. CT Page 334
The appropriate standard of review of a zoning agency's finding that a current use represents an expansion of a prior nonconforming use is whether that finding is supported by substantial evidence in the record. Zachs v. Zoning Board ofAppeals, 218 Conn. 324, 330, 589 A.2d 351 (1991); Hall v. Brazzale,31 Conn. App. 342, 344 n. 1, 624 A.2d 916 (1993). Moreover, where, as here, the zoning authority has stated the reasons for its decision, the court need not search beyond those reasons for alternative rationales. Protect Hamden/North Haven v. Planning Zoning Commission, 220 Conn. 527, 544, 600 A.2d 757 (1991). Finally, if any one of the reasons stated by the board for its decision are reasonably supported by the record, the board's decision must not be disturbed. Friedman v. Planning ZoningCommission, 222 Conn. 262, 268, 608 A.2d 1178 (1992).
IV. DISCUSSION
In the present case, the plaintiff has clearly requested permission to construct an "addition" onto his nonconforming, existing structure, which would result in a 34% increase in building area at the facility. Record: A-1; A-6, at 2; A-13. As stated by the board in its decision, such an action is specifically proscribed by § 14.06 of the Middletown Zoning Code, which provides that "[n]o additional structure or enlargement or increase of land area or relocation in whole or in part of any nonconforming useshall be permitted." (Emphasis added.) Accordingly, the plaintiff's appeal may be denied on this ground alone. See Wellsv. Zoning Board of Appeals, 180 Conn. 193, 198-99, 429 A.2d 467
(1980) (setting aside board's decision allowing nonconforming trailer park to be extended to an additional area and enlarged to include additional trailer sites, because local zoning regulations expressly prohibited the enlargement of any nonconforming use, and also provided that a nonconforming trailer park shall consist of only those trailer sites which were prepared and usable on the effective date of the regulations). See also Raffaele v. Planning Zoning Board of Appeals, 157 Conn. 454, 462, 254 A.2d 868 (1969) (an extension of the space allotted to a nonconforming use is a proscribed extension of that nonconforming use).
Moreover, the record is replete with evidence that the plaintiff's proposed modifications of its nonconforming use would result in a change in the character of said use. It is true, as the plaintiff points out, that "a mere increase in the amount of business done pursuant to a nonconforming use is not an illegal expansion of the original use." (Citations omitted; internal CT Page 335 quotation marks omitted.) Zachs v. Zoning Board of Appeals, supra,218 Conn. 331. See also DiBlasi v. Zoning Board of Appeals,224 Conn. 823, 833, 624 A.2d 372 (1993) (a change in intensity is not an acceptable criterion for determining whether a proposed use is a change in use or a continuation of an existing use).
Similarly, "`the fact that improved and more efficient instrumentalities are utilized in pursuit of the use does not exclude it from the category of an "existing use," provided these are ordinarily and reasonably adapted to make that use available to the owner, and the original nature and purpose of the undertaking remain unchanged.'" Zachs v. Zoning Board of Appeals, supra,218 Conn. 334, quoting DeFelice v. Zoning Board of Appeals, 130 Conn. 156,162, 32 A.2d 635 (1943).
Rather, "`[t]here must be a change in the character of the existing use in order to bring it within the prohibition of the zoning ordinance.'" Zachs v. Zoning Board of Appeals, supra,218 Conn. 331, quoting Salerni v. Scheuy, 140 Conn. 566, 571,102 A.2d 528 (1954). What constitutes a change in the basic nature and character of the nonconforming use depends upon the facts and circumstances of each case. In deciding whether the activity in question is a change in the character or scope of the nonconforming use, the following three factors should be considered: (1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property." (Citations omitted.) Zachs v. ZoningBoard of Appeals, supra, 218 Conn. 332.
Courts have approved proposed uses and structures where they have resulted in mere "intensifications" of the established, but nonconforming, uses or structures. See, e.g., Zachs v. ZoningBoard of Appeals, supra, 218 Conn. 332-33 (installation of eight additional antennae, transmitters, and a generator to a nonconforming radio tower constitutes a lawful intensification of a nonconforming use); Helicopter Associates, Inc. v. Stamford,201 Conn. 700, 717-18, 519 A.2d 49 (1986) (where state law requires that a license be obtained in order to conduct more than 36 flights per year from a heliport, authorization to conduct more than 36 flights per year would constitute a change in the character of the heliport; thus, a nonconforming heliport with permission to conduct no more than 36 flights per year may not perform more flights, because such an increase would constitute an unlawful expansion of CT Page 336 the nonconforming use); Hall v. Brezzale, supra, 31 Conn. App. 348-50 (change from occasional storage of some of a construction company's vehicles and equipment to continuous storage of all of the company's vehicles and equipment constitutes lawful intensification of a nonconforming use); Planning ZoningCommission v. Craft, 12 Conn. App. 90, 96, 529 A.2d 1328, cert. denied, 205 Conn. 804, 531 A.2d 937 (1987) (change from property owner's part-time, year-round use of house to full-time, year-round occupancy of house constitutes lawful intensification of a nonconforming use); State v. Szymanski, 24 Conn. Sup. 221, 225-26
(1962) (storage of more cars at a nonconforming used-car and repair business than number allowed by the zoning regulations constitutes a lawful intensification, rather than an illegal expansion, of a nonconforming use).
However, where property owners have sought to substantially add to, or change the character of, prior nonconforming uses, courts have struck down their proposals. See, e.g., ConnecticutResources Recovery Authority v. Planning Zoning Commission,
supra, 225 Conn. 744-47 (change in use from sewage lagoons to solid waste disposal at subject property constitutes unlawful expansion because it involves a change in the character of the use); Cummingsv. Tripp, 204 Conn. 67, 83-86, 527 A.2d 230 (1987) (extension from summer rental of cottages to year-round rental of cottages constitutes unlawful expansion); Wells v. Zoning Board of Appeals,
supra, 180 Conn. 198 (the addition of trailers to a nonconforming trailer park, where local zoning regulations expressly prohibit the enlargement of any nonconforming use, constitutes an illegal expansion); Macaluso v. Zoning Board of Appeals, 167 Conn. 596,599-600, 356 A.2d 885 (1975) substitution of a package store liquor permit for a drug store liquor permit constitutes an unlawful expansion of a nonconforming use, because it involves a change in the character of the use); Connecticut Sand Stone Corp.v. Zoning Board of Appeals, 150 Conn. 439, 443, 190 A.2d 594 (1963) (manufacture of concrete for sale constitutes an expansion of the nonconforming use of operating a sand and gravel pit, rather than a mere technical improvement, because the plaintiff has added a new undertaking to its business); Ruggiero v. Zoning Board of Appeals,
Superior Court, judicial district of Fairfield, Docket Number 284411 (1993) (rental of guest house to paying tenants constitutes unlawful expansion of use, where guest house was previously used only to house guests of the occupants of the principal house for short periods of time); Hansworth v. Zoning Board of Appeals,
Superior Court, judicial district of Fairfield at Bridgeport, Docket Number 299728 (September 29, 1993) (Fuller, J.) (a building's CT Page 337 extension from three dwelling units to four dwelling units constitutes an unlawful expansion, rather than a lawful intensification, of a nonconforming use); Forelli v. Zoning Boardof Appeals, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket Number 95310 (June 7, 1990) (Coppeto, J.) (extension of the volume/square footage of a personal residence constitutes an unlawful expansion rather than a lawful intensification).
In the end, "[t]he legality of an extension of a nonconforming use is essentially a question of fact." Connecticut ResourcesRecovery Authority v. Planning Zoning Commission, supra,225 Conn. 744, citing Cummings v. Tripp, supra, 204 Conn. 84. The court must keep in mind, however, that:
 while it is true that mere intensification of a nonconforming use is permissible so long as the nature of use is not substantially changed, it is generally recognized that the right of a landowner to continue the same kind of use to which the property was devoted on the critical date does not confer on him a right to subsequently change or add to that use a new and different one amounting to a drastic enlargement or extension of the prior existing use.
(Citation omitted; internal quotation marks omitted; emphasis added.) Planning Zoning Commission v. Craft, supra, 12 Conn. App. 96.
In the present case, the plaintiff originally obtained approval from the City to construct and operate a mini-transfer station" with a 50 yard compactor. The addition now sought to be constructed by the plaintiff is an "open-top transfer station." Thus, the plaintiff is seeking to change the type of transfer station to be operated on his property from a compactor transfer station to an open top transfer station. Record: T-1, at 5, 13.
 [T]he compactor is an enclosed structure. Once the trash is dumped into it, I mean it's open while the trash is being dumped into it and then it's closed and it waits until the next load and close. It's a mixed load and close. The open top truck is just that, it's an open top trailer. It's larger, doubling the size from fifty yards to a hundred yards. It's a trailer type truck about fifty feet long in total and that would be housed inside of a building and it would be covered up before it's driven away.
CT Page 338
Id., at 9 (Testimony of plaintiff's engineer, Joseph Magdol).
 Under the current operation incoming collection trucks enter a ramp up and empty their loads directly into our fifty cubic yard compactor which is located in a ramp down. The transfer station modification will consist of construction of a building, modification of the two truck ramps, and installation of a truck scale. The proposed building will house a tipping floor. Modifications to the ramp up are proposed in order to accommodate the new building layout and modifications to the ramp down are designed to accommodate one hundred cubic yard trailer trucks.
Id., at 7-8 (Testimony of plaintiffs engineer, Joseph Magdol).
Additionally, the Board received testimony establishing that the plaintiff's proposed operation would change the method of transferring the solid waste, and the type of trucks coming to his property.
 [T]he purpose of the building is to house a tipping floor. The purpose of the tipping floor is to be able to transfer loads in a different manner into a different kind of truck.
 The trailer trucks that we're proposing are a different type.
Id., at 9, 11 (Testimony of plaintiff's engineer, Joseph Magdol). Further, the joint decision of the Planning Director and the Zoning Enforcement Officer specifically stated that the expansion would result in "a change in the method of processing, a change in the type of trucks coming to and from the site and an expansion of the required amount of space for the new type of use." Record: S-1, at 2; T-1, at 6 (Testimony of Planning Director, William Warner). Thus, the Board received ample evidence to support the conclusion that the plaintiff's proposed expansion would fundamentally change the character and nature of the use involved.
Finally, the Board received testimony that the plaintiff's proposed operation would have a substantial impact on the neighborhood: CT Page 339
 The present use and volume has little effect on the neighborhood, we'll admit that, but a proposed expansion, expanded use clearly would. The character and the use would change from a private, low volume to a very public, high volume use. The present method of handling material is very compatible with the nature of the volume presently permitted but the change in size and the method is required of the change is required by the change in character of the use from private to a public multi-user.
Record: T-1, at 28 (Testimony of resident, Carl Bolz).
 In recent months an average of twenty to twenty-five tons per day of waste has been transferred to the station, although the capacity is much larger. Capacity is determined simply by how many incoming loads can physically be transferred during a typical operating day. Nominal capacity of the existing transfer station is two hundred tons per day. Construction of the modifications will not change this. Transferring five ton incoming loads per hour over an eight hour day or one every twelve minutes for a total of two hundred tons is a reasonable estimate of a maximum capacity of both the existing and the proposed transfer station.
Id., at 8 (Testimony of plaintiff's engineer, Joseph Magdol).
 [W]hat I'm afraid of is that a transfer station started in Middletown will grow like a cancer and will feed the Lisbon plant which will simply mean humongous trucks going up Route 9 and 91 which affect Middletown and the travelers on the highways of Middletown.
Id., at 31 (Testimony of resident, William Caffrey).
It is clear, therefore, that the Board had before it evidence and information regarding the three factors identified by the Zachs
court when making its determination regarding the issue of whether the plaintiff's proposed modifications fell within the scope of his existing nonconforming use. Such evidence and information, moreover, is sufficient to support the conclusion that the plaintiff's proposed modifications constitute an "expansion" rather than an "intensification" of a nonconforming use.
Accordingly, for the reasons set forth above, the plaintiff's CT Page 340 appeal must be, and is, hereby dismissed.